(No. 33256.—

THE PEOPLE *ex rel.* Emmet H. Nabstedt, Defendant in Error, *vs.* LUCILLE BARGER, by Frederick H. Potter, Guardian *ad litem,* Plaintiff in Error.

*Opinion filed September 23, 1954.*

FREDERICK H. POTTER, of Rock Island, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BERNARD J. MORAN, State's Attorney, of Rock Island, (WILLIAM C. WINES, and RICHARD MCCARTHY, of counsel,) for defendant in error; CHARLES LEVITON, of Chicago, (LEON M. DESPRES, WALKER A. JANSEN, and LAZARUS KRINSLEY, of counsel,) *amicus curiae.*

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case involves the constitutionality of the 1953 amendment to section 15 of the Family Court Act (Ill. Rev. Stat. 1953, chap. 23, par. 209,) which makes the mental illness of parents a legal ground for the adoption of their children. It is brought here to review a decree of the county court of Rock Island County which sustained the validity of the statute. Two questions of law have been certified under section 84 of the Civil Practice Act and Rule 48 of this court. Ill. Rev. Stat. 1953, chap. 110, pars. 208, 259.48.

Section 15 of the Family Court Act deals with the adoption of a child which has been found to be dependent, neglected or delinquent, and for whom a guardian has been appointed. It provides that the guardian of such a child may, if certain conditions are found to exist, be authorized by order of the family court "to appear in court where any proceedings for the adoption of such child may be pending, and to consent to such adoption." Prior to its amendment in 1953, the conditions specified were that surviving parents or others interested in the child consented to the order, that the parents or others interested were unfit to have custody of the child upon various enumerated moral grounds, or that there was a combination of consent on the part of one parent and unfitness on the part of the

other. The amendment added the following to the enumeration of conditions upon which an order might be entered authorizing a guardian to consent to adoption: "(3) one parent consents, or is dead or is unfit to have the child * * * and the other parent is mentally ill, and for a period of three years next preceding the filing of the petition or the supplemental petition the full civil rights of such parent have not been restored, and from the evidence by two qualified physicians selected by the court, the court further finds that such parent continues to be mentally ill and will not recover from such mental illness in the foreseeable future; * * *." The amendment also permits the entry of such an order upon the same terms if both parents are mentally ill.

The section as amended provides further that where a parent is found to be mentally ill, the court may appoint a reputable citizen of good moral character as guardian *ad litem* to represent the parent in the proceeding, and that it shall be unnecessary to obtain the consent of any person other than such guardian *ad litem* on behalf of the parent to the entry of an order authorizing the guardian to appear in the court where any proceedings for the adoption of the child may be pending and to consent to the legal adoption of the child.

"Mentally ill" is defined to mean any one or more of the following: adjudged by a court of competent jurisdiction (a) to be mentally ill pursuant to the provisions of the Mental Health Code; (b) to be insane or mentally ill under any prior law of the State; (c) to be insane pursuant to the provisions of any law of this State relating to criminal jurisprudence.

On the same day that the amendment to section 15 was approved, a companion bill amending section 4-1 of the Adoption Act in almost identical terms was also approved. Ill. Rev. Stat. 1953, chap. 4, par. 4-1; Laws of 1953, p. 1061.

The facts necessary to-an understanding of the certified questions are these: On October 20, 1948, Lucille Barger was adjudged to be a mentally ill person by the county court of Rock Island County and committed to a State hospital for the mentally ill, where she has since remained. At no time has she been restored to her full civil rights. Three days later, on October 23, 1948, a decree of the same court adjudged her son, Martin Joseph Barger, who was born on June 19, 1947, to be a dependent child, and appointed Reverend Gill Middleton as his guardian. This decree remains in full force and effect, and the child is still in the legal custody of Reverend Middleton, as guardian.

On February 15, 1954, the People on the relation of the chief juvenile probation officer, filed a supplemental petition alleging that Martin Joseph Barger's father has died since the entry of the dependency decree of October 23, 1948, that Lucille Barger, the mother, continues to be mentally ill and that there is no reasonable expectation of her recovery in the foreseeable future. It further alleged that the mother had been guilty of extreme and repeated cruelty to the child prior to the dependency decree, and of fornication after her commitment to the mental hospital. The principal relief sought was the entry of an order, authorizing Reverend Middleton, as guardian of the child, to appear in any court where any proceedings for his adoption might be pending and consent to his legal adoption.

Summons was personally served on Lucille Barger. On February 19, 1954, Frederick H. Potter was appointed her guardian *ad litem*. Two qualified physicians, Dr. A. Walter Wise and Dr. Verdamae Karr McKee, were directed to examine Lucille Barger and to testify at the hearing as to her condition. Mrs. Barger, by her guardian *ad litem*, moved to dismiss the supplemental petition upon the ground, among others, that the statute as amended to make the insanity of a parent a basis for adoption, is unconstitut-

tional in several enumerated respects. The guardian of the child answered the supplemental petition.

Both of the doctors who examined Lucille Barger were of the opinion that she would not recover from her mental illness in the foreseeable future. Dr. Wise diagnosed her mental condition as a "mental deficient, possible psychopathic personality, and questionable post encephalitis." He testified that he knew of no type of treatment or medicine which would assist in her recovery. Dr. McKee, a State psychiatrist of considerable experience, was familiar with the patient's case since her admission to the East Moline State Hospital, and had examined and treated her on several occasions prior to the examination at the direction of the county court. She diagnosed Mrs. Barger's mental condition as: "chronic brain syndrome, associated with intra-cranial infection other than syphillis—epidemic encephalitis with behaviorial reaction. The symptoms are irritability, resistiveness, aggressiveness, cruelty, and untruthfulness, over which she has no conscious control." Dr. McKee testified further than this condition is not hereditary but is due to infection, that the condition is one which becomes progressively worse and that there is no possibility of recovery; that the patient had been at the institution on four different occasions, including the last admission in 1948; that it had always been necessary to return her because of her behavior, and that her condition had grown progressively worse.

A supplemental decree was entered on April 8, 1954, sustaining the constitutionality of the Family Court Act as amended, denying the motion to dismiss, and directing the guardian *ad litem,* on behalf of Lucille Barger, to execute a consent forthwith to the entry of an order authorizing the guardian of Martin Joseph Barger to appear in any court where any proceedings for adoption of the child may be pending and consent to his legal adoption, without

any further notice to the mother and without securing the consent of any other person.

The first question certified is: "Does the 1953 amendment to the Family (Juvenile) Court Act, (Sec. 209, Chap. 23, 1953, Ill. Rev. Stats.) violate any constitutional right on the part of the mother whatever, either to due process procedurally, or in substance to the eventual custody, care, tuition and control of her said child, or otherwise?" This question the trial judge answered in the negative. The question is certified in general terms without reference to any particular provisions of the State or Federal constitutions. We will answer the question despite the defective form in which it is presented, but our answer will be limited to the contentions with respect to due process which have been argued by the parties.

An attack is made upon the amended statute on the ground that it violates substantive due process. The contention is based upon the possibility that a parent who is insane would, upon restoration to reason, be barred by an adoption decree, entered while insanity continued, from the right to the custody and companionship of the child. It must be conceded that the possibility exists, although it is remote. The concession does not, however, invalidate the act.

Conflicting interests beyond the power of legislature or court to eliminate are inevitably involved in the human relationships with which the statute deals. One interest is that of the parent in the custody of his child in the event of recovery. The other is that of the State in the welfare of the child. Choice cannot be avoided. Indeed, legislative inaction is itself a choice. The constitution does not forbid selection of the alternative which favors the welfare of the public. *Miller* v. *Schoene, 276* U.S. *272.*

The concern of the legislature for the interest of the parent shows in its requirement that the mental illness must have continued for a period of three years and must,

in the opinion of two qualified physicians, be such that there will not be recovery in the foreseeable future. The brief of *amicus curiae* points out that the statutes of thirty-two State contain provisions authorizing adoption of a child of an insane parent and that in no instance has such a statute been held invalid. Without analyzing their provisions in detail, we note that a majority of the statutes of other States do not contain a requirement that insanity must have existed for a prescribed period of time before the entry of an adoption decree. Nor are they so strict in their requirements concerning medical evidence as to the permanent character of the mental illness.

We are of the opinion the provisions of section 15 as amended do not constitute a violation of the substantive requirements of due process.

Plaintiff in error's first attack upon the procedural provisions of the statute is upon the ground that it fails to require service of process upon the parents or near relatives of the child when a supplemental petition is filed. The failure to require such service of process, it is said, renders the statute void, even though in this case summons to answer the supplemental petition was personally served upon the mother.

Of course notice and an opportunity to be heard are essential conditions precedent to a judgment which cuts off the rights of the natural parent to custody of the child. (*Sullivan* v. *People ex rel. Heeney*, 224 Ill. 468, 475-6.) But we believe that the argument against the statute is based upon a misapprehension. Section 15 is concerned with two types of petitions praying that the guardian of a dependent, neglected or delinquent child be authorized to consent to the legal adoption of the child. The first is "the petition filed, as is provided in Section 4 hereof." The second is "a supplemental petition filed at any time after the appointment of the guardian." The petition filed under section 4 is the petition originally filed seeking the appoint-

ment of a guardian for a dependent, neglected or delinquent child. Section 4 expressly states that the parents, if alive, or the guardian, or a near relative, if known, must be made defendants and notified of the proceeding by summons "in the same manner as is now or may hereafter be required in chancery proceedings * * *." The supplemental petition mentioned in section 15 is one which is filed after the court has acquired jurisdiction and has exercised it through the appointment of a guardian. The jurisdiction of the subject matter and of the parties acquired by the original petition is a continuing jurisdiction. "The guardianship under this act shall continue until the court shall by further order otherwise direct * * *." (Ill. Rev. Stat. 1953, chap. 23, par. 201; see also pars. 202, 203.) Since the court has acquired jurisdiction of the proceeding and of the parties to it before the filing of a supplemental petition, further service of summons is unnecessary. No more is needed than the notice ordinarily given of an intended application to the court for the entry of an order when statute or special circumstances do not warrant an *ex parte* application.

It is next contended that notice to a "near relative" is essential to due process where the parent is incurably mentally ill. As has been pointed out, if the parents are dead section 4 of the act requires service upon a near relative, if known, in connection with an original petition for an order authorizing a guardian to consent to adoption. So far as a supplemental petition is concerned, what has been said above disposes of the contention. Due process does not require either summons or notice to a near relative in connection with a supplemental petition.

It is also pointed out that the issue as to the duration of the parent's insanity is to be determined by the court upon the evidence of two physicians, and that no trial by jury is provided. The argument appears to be that a trial by jury is required by the constitution. In this connection

it need only be observed that the statute contemplates a previous adjudication of mental illness or insanity by a court of competent jurisdiction. The matter before the court in the section 15 proceeding is not the parent's insanity, but rather the medical estimate of its probable duration. We are referred to no constitutional provision, and we are aware of none, which requires that this question, arising as it does in the course of a statutory proceeding unknown to the common law, be submitted to a jury. *Lindsay* v. *Lindsay*, 257 Ill. 328.

The final contention is that the statute violates section 14 of article II of the constitution in that it is an *ex post facto* law. The argument is that the statute gives a retroactive effect to the adjudication of the mental illness of the plaintiff in error in 1948 and her commitment to a mental institution for a period of more than three years prior to the filing of the petition. It is clear that so far as the adjudication of mental illness is concerned the statute is intended to have a retrospective operation, for one of the definitions of the term "mentally ill" is "Adjudged by a court of competent jurisdiction to be insane or mentally ill under any prior law of this state." It does not follow, however, that this retrospective aspect of the statute makes it invalid. The contention that it does rests upon the fallacious premise that a parent's right or interest in his children is an absolute vested property right. The law is to the contrary. *Ekendahl* v. *Svolos*, 388 Ill. 412; *Purinton* v. *Jamrock*, 195 Mass. 187.

For the reasons stated, we answer "No" to the first of the certified questions.

That conclusion makes it unnecessary to consider the second question of law certified, which is: "Does the Court have jurisdiction of the subject-matter to determine whether either extreme cruelty by the mother of the child prior to the adjudication of the mother as mentally ill, or fornication by the mother subsequent to such adjudication

and while it remained in full force and effect, were barred as independent grounds for the authorization of the guardian of the child to consent to its adoption by the mental illness of the mother?"

The supplemental decree of the county court of Rock Island County is affirmed.

*Supplemental decree affirmed.*