(No. 35831.

Hershey Mfg. Co., Appellee, *vs.* Benjamin S. Adamowski, State's Attorney, Appellant.

*Opinion filed March 29, 1961.—Rehearing denied May 17, 1961.*

Hershey, J., Schaefer, C.J., and Solfisburg, J., dissenting.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and EDWARD J. HLADIS, Assistant State's Attorneys, of counsel,) for appellant.

QUINN, JACOBS, BARRY & LATCHFORD, and YOWELL, LONG, MACDONALD & YOWELL, both of Chicago, (MELVIN M. JACOBS, DAVID J. BARRY, JOSEPH O. KOSTNER, JOHN J. YOWELL, and G. KENT YOWELL, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

On July 1, 1959, the plaintiff, Hershey Mfg. Co., filed a complaint for a declaratory judgment, seeking to have declared unconstitutional the act of 1919 protecting counties having naval stations and military posts from gambling devices, (Ill. Rev. Stat. 1957, chap. 38, pars. 344-348,) praying for the restoration to interstate commerce certain property seized from an interstate carrier by the defendant, Benjamin S. Adamowski, State's Attorney of Cook County, pursuant to the aforesaid statutory provisions, and seeking a permanent injunction restraining and forbidding further interference with the manufacture by plaintiff of slot machines, subassemblies and essential parts for shipment in interstate commerce in compliance with the Johnson Act (15 U.S.C.A. 1171 et seq.). After a full hearing, the superior court of Cook County entered its decree, on February 2, 1960, granting the relief sought by the plaintiff. The defendant has filed his direct appeal from that decree. Jurisdiction is predicated upon section 75(1)(a) of the Civil Practice Act (Ill. Rev. Stat. 1959, chap. 110, par. 75(1)(a),) inasmuch as the decree declared unconstitutional the statutory provisions challenged by the plaintiff. *People ex rel. Ryan* v. *Sempek,* 12 Ill.2d 581, 584; *Jenisek* v. *Riggs,* 381 Ill. 290, 293; *Shilvock* v. *Retirement Board,* 375 Ill. 68.

The plaintiff, an Illinois corporation, maintains its principal office and factory at 4309 West Lake Street, Chicago. It is engaged principally in the manufacture of slot machines and parts exclusively upon the order of and for delivery to customers in interstate commerce and foreign commerce in accordance with the Johnson Act. In addition to slot machines and parts, the plaintiff manufactures electronic photo-flash equipment, and coin-operated milk vendors, and also engages in a variety of subcontract work not associated with gambling devices. The plaintiff's average annual sales are from $600,000 to $700,000, of which at least 60% is attributable to its slot machine manufacturing operations.

Prior to March, 1958, when certain raids were made by the defendant and certain property was seized from the Ace Manufacturing Company, another slot machine manufacturer, plaintiff manufactured, assembled and completed slot machines for shipment to Nevada and certain foreign countries. The plaintiff and predecessor organizations were in the business of manufacturing slot machines since 1906 and prior to the Ace Manufacturing Company difficulty with defendant's office, five manufacturers operating in Chicago had shipped completed machines for fifty years. After the raid on Ace Manufacturing Company, plaintiff, on the advice of its counsel and as the result of what happened to Ace, ceased assembling slot machines in Cook County and limited its activities in Cook County to the manufacture of parts only.

On June 27, 1958, at 3:30 in the afternoon, plaintiff's factory was searched pursuant to a search warrant authorizing a search for slot machines a'legedly being manufactured and assembled in violation of section 1 of the act of 1919, above cited. The search warrant was based upon an information in which one Raymond Burton swore that 100 slot machines were being shipped from plaintiff's factory to a gambling establishment at Las Vegas, Nevada, and that

"said shipment is now being arranged for immediate delivery from aforesaid premises in Chicago to the establishment in Nevada." The return indicates that 37 assembled slot machine mechanisms without outside covering, 20 outside cases of slot machines and 2 boxes containing assorted slot machine parts were seized.

On the same day, June 27, 1958, defendant seized without warrant, 31 parcels of slot machine subassemblies and parts which were the property of the plaintiff. These items were in the possession of Transworld Airlines, Inc., an interstate freight carrier, and were covered by 3 bills of lading, indicating that they were consigned to a purchaser at Las Vegas, Nevada. This shipment was admittedly in compliance with the Johnson Act.

In July, 1958, the plaintiff filed a complaint before a three-judge district court in the northern district of Illinois which dismissed the complaint for lack of jurisdiction; and that order of dismissal was affirmed by the United States Supreme Court in *Hershey Mfg. Co.* v. *Adamowski*, 360 U.S. 717, 3 L.ed.2d 1540. During the period that this matter was under advisement in the Federal court, the plaintiff continued operations under the protection of a restraining order issued by the Federal court. On April 15, 1959, the day after the Federal court dissolved the restraining order, the plaintiff's premises were raided again and the president of the plaintiff corporation was arrested. No gambling devices or parts of gambling devices were found or seized by the State's Attorney's police at that time.

After the dissolution of the Federal court temporary injunction order, the plaintiff was put to the expense of assembling machines in Nevada and at a branch in Elgin, Illinois, at considerable additional cost. Completed slot machines were shipped into interstate and foreign commerce from Elgin at the time this proceeding was pending in the trial court.

At the outset, we are confronted by the claim of the defendant that the trial court improperly granted injunctive relief, inasmuch as the plaintiff had an adequate legal remedy pursuant to the provisions of the Replevin Act. (Ill. Rev. Stat. 1957, chap. 119.) Plaintiff's action, however, sought to protect a valuable property right, which is the proper subject matter of equitable action. (See *International News Service* v. *Associated Press,* 248 U.S. 215, 236, 63 L. ed. 211.) It is patent that prevailing in a multiplicity of replevin suits instituted by it can not be considered an adequate remedy at law for the plaintiff. The orders pursuant to which the merchandise was manufactured would go unfilled while each replevin case was pending. Plaintiff's right to continue in the business of manufacturing slot machines and parts would not be decided in a replevin action, the gist of which is the right of possession. Finally, it is well established that equity jurisdiction exists to restrain criminal proceedings under statutes or ordinances alleged to be unconstitutional when the prevention of such proceedings is essential to the safeguarding of rights of property. (*Jackie Cab Co.* v. *Chicago Park District,* 366 Ill. 474, 478; *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, 523; *Packard* v. *Banton,* 264 U.S. 140, 68 L.ed. 596; *Terrace* v. *Thompson,* 263 U.S. 197, 68 L.ed. 255; *Dobbins* v. *City of Los Angeles,* 195 U.S. 223, 49 L.ed. 169.) In our view, the form of the action filed by the plaintiff here was proper.

Citing our decisions in *Bobel* v. *People,* 173 Ill. 19; *Frost* v. *People,* 193 Ill. 635; and *People* v. *One Device,* 410 Ill. 318, the defendant maintains that slot machines in Illinois are classified as contraband and, accordingly, are not within the scope of protection afforded by a court of equity. In short, the defendant contends that section 2 of the act of June 21, 1895, as amended, prohibiting gambling devices (Ill. Rev. Stat. 1957, chap. 38, par. 342,) declares the plaintiff's slot machines to be contraband and that

therefore plaintiff has no standing in court to attack the validity of the act of June 11, 1919. (Ill. Rev. Stat. 1957, chap. 38, pars. 344 *et seq.*) The interrelationship of these two statutes commands our attention.

Section 2 of the 1895 act, as amended, provides as follows: "Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found. A coin-in-the-slot-operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no coins, tokens or merchandise shall not be considered to be a gambling device within the meaning of this Act and any right of replay so obtained shall not represent a valuable thing within the meaning of this Act."

Section 1 of the 1919 act, pursuant to which the search warrant was issued, provides as follows: "That it shall be unlawful for any person, firm or corporation, as owner, agent or otherwise, to manufacture, sell, lease, or hold, or offer for sale, or lease to another any clock, joker, punch board, tape or slot machine, or any other device upon which money is staked or hazarded, or into which money is paid or played upon chance, or upon the result of the action of which money or valuable thing is staked, bet, hazarded, won or lost, in any county in the State of Illinois in which there is a United States military post, or United States naval training station of the first class."

In *People* v. *One Device*, 410 Ill. 318, 321-22, we summarized the legal policy of this State proclaimed by the 1895 act and the holdings of the *Frost* and *Bobel* cases, as

follows: "The statute (Ill. Rev. Stat. 1949, chap. 38, par. 342,) describes gambling devices and provides that such devices shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found. By this statute the legislature has determined that gambling devices are pernicious and dangerous to the public welfare and the keeping of them is prohibited by law. The constitutionality of this act has been sustained by this court in *Frost* v. *People,* 193 Ill. 635, and in *Bobel* v. *People,* 173 Ill. 19. These cases lay down the principles that devices which are manufactured, made, or kept for gambling purposes *and have no potential for lawful use,* are gambling devices *per se* and are not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provisions. These cases have been consistently followed by this court." (Emphasis added)

In the case before us, it is admitted that the slot machines manufactured by the plaintiff are destined exclusively for foreign and interstate commerce and are shipped in strict compliance with the Johnson Act. Under these circumstances, we conclude that the trial court properly found that plaintiff's products have a potential for lawful use and are outside the proscription of the 1895 act. Any other conclusion would make redundant the provisions of the 1919 act. We do not believe that the legislature, in passing the 1919 act, sought the prohibition of the manufacture of slot machines in some counties of this State, if such manufacture had been outlawed in all counties 24 years previously by the passage of the 1895 act.

We must therefore face the constitutional issue. The trial court held that the 1919 act is vague and indefinite, and that for such reason it violates section 2 of article II of our constitution. In doing so the court recognized un-

contradicted evidence that the phrases "naval training station of the first class" and "military posts of the first class" are not and never have been in use either in the army or in the navy; and concluded that the words "first class" are so vague in meaning that the act is void.

To avoid the constitutional issue, defendant argues that the words qualify only the term "naval training station;" and that the act applies to every county having a military post (whether of the "first class" or not) as well as to any, of course, which has a naval training station of the first class. If this contention were valid the manufacture of gambling devices would be prohibited in Cook County for the simple reason that it has a military post. It would be unnecessary to decide whether Cook County also has a naval training center "of the first class"; and the constitutional question would therefore not be reached.

We think, however, that the contention is without merit. Examination of the title and body of the act shows the phrase is used in referring both to military posts and to naval training stations. Thus in the body of the act its protection is made applicable to any county "in which there is a United States military post, or United States naval training station of the first class." The title of the act, on the other hand, describes it as one to protect all counties "in which there are United States naval stations, and military posts of the first class." The descriptive words "of the first class" are not limited, therefore, to naval training stations; and the constitutional question cannot be avoided by so construing the act.

When the phrase in question is tested by ordinary standards of precision it is evident that it fails to meet the constitutional requirement. As the United States Supreme Court observed in *Connally* v. *General Construction Co.* 269 U.S. 385, 391, 70 L. ed. 322, 328, " a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at

its meaning and differ as to its application violates the first essential of due process of law." We agree with the trial court that a military establishment "of the first class" conveys no reasonably clear and definite meaning; and that the presence of such language renders the statutory prohibitions void for uncertainty. The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY, dissenting:

The slot machines manufactured by plaintiff are, in my opinion, contraband under Illinois law and are not within the protection afforded by a court of equity. The majority reaches a contrary result by lifting a single phrase from our opinion in *People* v. *One Device,* 410 Ill. 318, and giving that phrase a strained and unwarranted construction which erodes, if it does not undermine, the public policy of Illinois as declared by its legislature and subordinates our public policy to that of a sister State having a different policy. The act of June 21, 1895 (Ill. Rev. Stat. 1957, chap. 38, par. 342) specifically and without qualification declares a slot machine to be a gambling device and subject to seizure and confiscation. Such devices are not the subject of property rights which the law protects. *People* v. *One Device,* 410 Ill. 318; *Frost* v. *People,* 193 Ill. 635; *Bobel* v. *People,* 173 Ill. 19.

In *People* v. *One Device,* 410 Ill. 318, 321-22, we summarized earlier decisions dealing with the 1895 Act by saying that these cases "lay down the principles that devices which are manufactured, made, or kept for gambling purposes and have no potential for lawful use, are gambling devices *per se* and are not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provisions."

Seizing upon the words "and have no potential for lawful use," the majority concludes that, since slot machines

are not illegal in Nevada, the machines in question have a potential for lawful use and are outside the proscription of the 1895 act. Since it is hard to imagine any device which is not lawful somewhere, this interpretation, if carried to its logical conclusion, would effectively emasculate the 1895 act.

If, in *People* v. *One Device,* we had intended the phrase "and have no potential for lawful use" in the sense now attributed to it by the majority, the sentence in which that phrase was used would be a logical and linguistic absurdity. That sentence dealt with devices that are gambling devices *per se.* But, under the construction adopted by the majority opinion, there is no such thing as a gambling device *per se.* The natural interpretation of the language, taken in its context, is that the legislature has designated certain devices, among them slot machines, and has determined that such devices are gambling devices *per se* and have no potential for lawful use. The true distinction between devices which are gambling devices *per se* and other articles which have a potential for lawful use was drawn in the *Frost case,* where certain of the items were found to be gaming implements which had no value for use for any other purpose, while other items, *e.g.,* a long table, three packs of cards, an office chair and four stools, were found not in actual use for gaming purposes and were of value for other purposes. I know of no case in this State, until the present one, holding that a slot machine is anything other than a gambling device *per se.* I believe that the 1895 act must be read to outlaw the manufacture of any device which has no potential for lawful use *as measured by the policy of Illinois.* A slot machine is clearly such a device.

The emphasis placed in the opinion upon the fact that the slot machines manufactured by plaintiff "are shipped in strict compliance with the Johnson Act" seems to suggest that Congress has thrown around plaintiff's machines a cloak of immunity from State regulation that they would

not enjoy in the absence of Federal legislation. An examination of the text and the legislative history of the Johnson Act reveals the fallacy of this notion. The Johnson Act first prohibits the transportation of gambling devices in interstate commerce, but provides that this prohibition shall not apply to the transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from this prohibition. (15 U.S.C.A., par. 1172.) The act then provides for registration and reports by manufacturers of gambling devices. The reports of the committees in both houses of Congress on the bill which became the Johnson Act indicate clearly that the purpose of the legislation was to support the policy of the States which outlaw slot machines and similar gambling devices by prohibiting the use of the channels of interstate and foreign commerce for the shipment of such devices into such States. (Senate Report No. 1482, pp. 1-2, 81st Congress—2nd Session; House Report No. 2769, p. 2, 81st Congress—2nd Session.) There is no evidence of any intention on the part of Congress to deprive any State of any regulatory powers over gambling devices within its borders which it would possess in the absence of Federal regulation. The effect of compliance with the Johnson Act by a manufacturer is to remove him from the penalties of that act to which he would otherwise be subject. It does not immunize him from State regulation. With respect to their status under Illinois law, plaintiff's machines have exactly the same standing, no better and no worse, as if there were no Federal legislation.

One other matter should be mentioned. As the majority opinion now stands, it is difficult to tell whether the decision is based on State or Federal grounds; that is, whether the same result would have been reached solely on the basis of the Illinois statutes without regard to the Johnson Act and the commerce clause of the Federal constitution, or whether the majority felt that its conclusion was compelled by the

Johnson Act and the commerce clause. If the former is the case, then this litigation has reached the end of the road, and the decision of this court is the final word on the subject. If the latter, then our decision is subject to review by the Supreme Court of the United States. A decent respect for the litigants and for the United States Supreme Court would indicate that this matter should be clarified. Otherwise we may find this case tossed back in our laps by the United States Supreme Court for a more definite indication of whether our decision is based on State or Federal grounds.

SCHAEFER, C.J., and SOLFISBURG, J., join in this dissent.