*In re* WILLIAM LADEWIG, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ANN E. LADEWIG, Respondent-Appellant.)

(No. 61447; ▮▮▮▮▮▮▮▮)

First District (4th Division)—November 26, 1975.

Bruce L. Levin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The instant appeal stems from a juvenile court proceeding that was brought to empower a court-appointed guardian to consent to the adoption of a minor, one William Ladewig. The trial court found Ann E. Ladewig, the minor's natural mother, to be "unfit" within the purview of the Illinois Adoption Act for her failure to maintain a reasonable degree of interest in her son's welfare (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1

D(b))' and for her lack of reasonable progress in seeking the return of her child within the time period sanctioned by statute. (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1D($l$).) The court also terminated Mrs. Ladewig's parental rights and appointed a guardian with the authority to consent to the legal adoption of her son.

On appeal, Mrs. Ladewig contends that the two statutory grounds under which she was adjudicated "unfit" are unconstitutional in that (1) section D (b) of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1 D (b)) violates the due process clause of the United States Constitution because of its vagueness and failure to adequately specify the conduct which it prohibits and (2) section D ($l$) (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1D ($l$)) was applied retroactively in violation of the ex post facto laws contained in article I, section 9 of the United States Constitution. As a third basis of appeal, she posits that the evidence adduced at trial was insignificant to support a finding that she was "unfit" within the meaning of either of the two statutory grounds specified in the amended petition.

A review of the record indicates that seven weeks after William Ladewig was born, he was removed from his mother's custody since the boy's father was in jail on armed robbery charges and his mother was involved in an automobile accident which caused her to be hospitalized for almost two months. Subsequent to Mrs. Ladewig's departure from the hospital, a petition was filed in January, 1970, alleging neglect by the child's parents and that the best interests of the minor required that he be declared a ward of the court. After proper service was given to the parents, the court found on April 2, 1970, that William Ladewig was a neglected minor and placed him under State guardianship. In that same month, he was placed in the foster home of Mr. and Mrs. Walter Wassinger, the aunt and uncle of the child's godfather. Since the child was placed in their home, the Wassingers have cared for and supported him.

On December 12, 1973, a petition for supplemental relief was filed by the Department of Children and Family Services which sought the appointment of a guardian who had the power to consent to the adoption of the child in question. The rationale behind this petition, which was amended on January 31, 1974, was that the minor's parents were "unfit" under the Illinois Adoption Act in that they failed to (1) "maintain a reasonable degree of interest, concern or responsibility as to [their] child's welfare" (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1D (b)) and (2)' "make reasonable progress toward the return of the child to * * * [their custody] within twenty-four months after an adjudication of neglect under Sec. 2—4 of the Juvenile Court Act." (Ill. Rev. Stat. 1973,

ch. 4, par. 9.1—1D (*l*).) Since this petition was contested only by Mrs. Ladewig, the court found Mr. Ladewig "unfit" by default.

At the trial, the State presented evidence from two social workers, the foster mother, the child and from Mrs. Ladewig herself, who was called as an adverse witness, pertaining to the infrequency of visitation between Mrs. Ladewig and her son during the years 1971 through 1973. Robert Johnson was called by the defense and testified that he intended to marry Mrs. Ladewig after she procured a divorce. Both Johnson and Mrs. Ladewig indicated that they were financially and emotionally prepared to provide a suitable home for the child. At the conclusion of all the testimony, the trial court ordered an examination of Mrs. Ladewig by a court psychiatrist. After obtaining the report, the trial court summarized it as follows:

> "* * * that the mother's functioning over the subsequent five years, in the doctor's opinion, suggest a more fundamental disorder than merely residual effects of the automobile accident; that the mother's prognosis for future functioning are somewhat marginal. And in the doctor's opinion, she cannot now and will not in the forseeable future be capable of providing sufficient mothering of the child."

The trial court then concluded that Mrs. Ladewig was unfit in light of both grounds specified in the petition. The Department of Children and Family Services, through the guardianship administrator, Richard I. Laymon, was appointed guardian with the right to consent to adoption.

■■ With reference to the constitutional challenges proffered by Mrs. Ladewig, we initially emphasize that it is well settled in Illinois that issues of constitutionality of a statute are properly preserved for review only when they have been raised in and passed upon by the trial court. (*E.g., People v. Amerman,* 50 Ill.2d 196, 197, 279 N.E.2d 353, 354; *Department of Public Works & Buildings v. Schon,* 42 Ill.2d 537, 538, 250 N.E.2d 135, 136.) This judicial precept has recently been invoked to resolve a challenge of constitutional dimensions to the Adoption Act, where, as in the instant case, section 1 D (b) was castigated as being vague. (*In re Einbinder,* 31 Ill.App.3d 133, 136, 334 N.E.2d 187, 189.) Therefore, since Mrs. Ladewig failed to raise the instant constitutional arguments in the trial court, she thereby waived them on appeal.

■■ Assuming arguendo that Mrs. Ladewig preserved the right to proffer such constitutional issues, we nevertheless believe that the respective two sections of the Adoption Act do not suffer the same infirmities as so contended. Concerning the due process attack of section D (b), it is argued that the language of this legislative enactment does not provide adequate warning to parents as to the type of conduct prescribed by

law in order to enable them to avoid the effect of the law. While Mrs. Ladewig argues that the only evidence of "unfitness" on her part pertained to the number of visits she had with her son, she emphasizes that section 1D (b) neither specifies whether visitation is the criterion in determining fitness nor delineates the number of visits that would evince a parent's reasonable degree of "interest, concern or responsibility as to the child's welfare." While due process of law requires that a statute shall not be vague, indefinite or uncertain, (*People v. Tibbetts,* 56 Ill.2d 56, 59, 305 N.E.2d 152, 155; *People v. Simpson,* 24 Ill.App.3d 835, 840, 321 N.E.2d 464, 467), both the United States and Illinois Supreme Courts have indicated that this constitutional tenet does not require that a statute be more specific than is possible under the circumstances. (See *Jordan v. De George,* 341 U.S. 223, 231, 95 L.Ed. 886, 71 S.Ct. 703; *Wadlington v. Mindes,* 45 Ill.2d 447, 457-58, 259 N.E.2d 257, 263-64.) Moreover, both courts have enunciated that a statute is vague and thereby violates due process of law when men of common intelligence must necessarily guess at its meaning and differ as to its application. *E.g., Bouie v. Columbia,* 378 U.S. 347, 351, 12 L.Ed.2d 894, 84 S.Ct. 1697; *Baggett v. Bullitt,* 377 U.S. 360, 367; *People v. Palkes,* 52 Ill.2d 472, 475, 288 N.E.2d 469, 471; *Hershey Manufacturing Co. v. Adamowski,* 22 Ill. 2d 36, 43-44, 174 N.E.2d 200, 204.

■■ Applying the above-mentioned judicial precepts to the case at bar, we believe that section 1D (b) is valid and does not violate due process. As pointed out in the State's brief, the adoption laws of Illinois are not unique but somewhat analogous to those enacted in each of the other forty-nine States. Except for some variance in the language of the respective statutes, they are all drafted in general terms for the purpose of protecting the child or children involved in the particular matter since there are variegated ways in which parents might fail to be reasonably interested or concerned for their child's welfare. To adopt Mrs. Ladewig's contention pertaining to the statutory absence of specificity regarding visitation would not only be contrary to this legislative purpose, but would also preclude courts from resolving the issue of "unfitness" based on the entire facts of a given case. This reasoning becomes apparent when applied to the facts of the instant case. The evidence showed that the child for all intents and purposes had been separated from his natural mother practically from birth and had lived in a secure and happy foster home for the past six years. During such time, Mrs. Ladewig did not perform any specific act which contributed to the child's welfare. Her visits could only be classified as few and sporadic. Therefore, just as this court concluded on the subject of child neglect (*People v. Schoos,* 15 Ill.App.3d 964, 967, 305 N.E.2d 560, 562) parental unfitness as defined

under section 1D (b) is incapable of a precise and detailed definition and, contrary to Mrs. Ladewig's contention, such legislative enactment does not violate the due process clause of the United States Constitution.

■■ We believe further that section 1D($l$) of the Adoption Act was not unconstitutionally applied retroactively in violation of the ex post facto laws contained in article 1, section 9 of the United States Constitution. While Mrs. Ladewig argues that such constitutional provision precludes a statute from rendering illegal any act or conduct which was committed prior to the enactment of that statute, it must be remembered that the constitutional prohibition against the passage of ex post facto laws applies only to criminal laws and has no relation to retrospective legislation of any other description. (*Stein v. Howlett*, 52 Ill.2d 570, 583-84, 289 N.E.2d 409, 416; *Jewell v. Carpentier*, 22 Ill.2d 445, 451, 176 N.E.2d 767, 770.) Moreover, to posit that this section of the Adoption Act is invalid merely because of its retrospective effect is also without merit since retrospective laws are invalid only when they operate to impair vested or contractual rights. (*Peoples Store of Roseland v. Mc-Kibbin*, 379 Ill. 148, 152, 39 N.E.2d 995, 997; *Fourt v. DeLazzer*, 348 Ill.App. 191, 194, 108 N.E.2d 599, 600.) Judicial construction of this legal precept has further indicated that a parent's right or interest in his children does not constitute an absolute vested property right. (*People ex rel. Nabstedt v. Barger*, 3 Ill.2d 511, 519, 121 N.E.2d 781, 785.) Therefore, since section 1D($l$) does not affect criminal liability nor a vested property right, this legislative enactment is valid within the ambits of the ex post facto laws of the United States Constitution.

■■ We also disagree with Mrs. Ladewig's contention that the evidence was not sufficient to support the trial court's finding that she was "unfit" within the meaning of the respective two sections of the Adoption Act. It is well settled in Illinois that before a court may empower a guardian to consent to an adoption without the consent of the natural parents, there must be clear and convincing evidence of "unfitness." (*E.g., In re Grant*, 29 Ill.App.3d 731, 735, 331 N.E.2d 219, 222; *In re Ybarra*, 29 Ill. App.3d 725, 729, 331 N.E.2d 224, 227.) We believe that the evidence unequivocally satisfies this standard. The fact that Mrs. Ladewig failed to maintain a reasonable degree of interest in her child was evident from her few and sporadic visits to him during the past six years in which he was living with the Wassingers. Although she attributed her infrequent visits to transportation difficulties as well as the friction that allegedly developed with the Wassingers, the record is devoid of any evidence that such obstacles precluded her from keeping informed about her son's welfare by telephoning him, writing letters to him or talking with case-

workers about other means of making periodic inquiries. Mrs. Ladewig also failed over this same time period to make any significant progress toward the return of the child to her custody. As the record reveals, it was only after Mrs. Ladewig admitted to neglect in open court that her son was placed in a foster home. Yet, not once during the five years subsequent to such placement did Mrs. Ladewig make a request to the Department of Children and Family Services for the return of the child. While Mrs. Ladewig contends that the rationale behind this was her inability to attain adequate employment or living conditions, we believe that based on the uncontroverted psychiatric report, she could not, and will not in the forseeable future, be capable of providing adequate care to the child. Finally, Mrs. Ladewig's reliance on *In re Gibson*, 24 Ill.App. 3d 981, 322 N.E.2d 223, is clearly distinguishable on its facts from the instant case since in *Gibson*, the mother not only visited the child at least once a week during the period prior to the trial, but had also cared for the child for the first two and one-half years of the child's life. We therefore conclude that the failure of the mother to make reasonable progress toward the return of her child coupled with her failure to manifest any interest in her child for a period of six years are sufficient to constitute "unfitness" as defined under the respective sections of the Adoption Act.

For the reasons stated, we are of the opinion that the trial court properly entered an order permitting adoption and the judgment of the circuit court is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.