711 N.E.2d 478 (1999)
305 Ill. App.3d 175
238 Ill.Dec. 375
In re K.P. and K.P., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Atricia Watts and Butch Powell, Respondents-Appellants).
In re T.B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Atricia Watts, Respondent-Appellant).
Nos. 4-98-0931, 4-98-0932.
Appellate Court of Illinois, Fourth District.
May 27, 1999.
*480 James R. Inghram, Inghram & Inghram, Quincy, for Atricia Watts.
Barney S. Bier, State's Attorney, Quincy, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, Kathy Shepard, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice McCULLOUGH delivered the opinion of the court:
On September 9, 1996, the State filed petitions to adjudicate T.B., then almost age three; K.P., then about one year old; and K.P., then 2½ months old (hereinafter Kn.P.), wards of the court. The children lived with respondents Atricia Watts, the mother of all three children, and Butch Powell, the father of Kn.P. and K.P.
On February 24, 1997, the children were adjudicated neglected and made wards of the court. On April 28, 1997, the children were removed from respondents' home. On March 30, 1998, the State filed a petition to terminate respondents' parental rights for failure to make reasonable efforts and reasonable progress to correct the conditions requiring removal within 12 months after an adjudication of neglect (750 ILCS 50/1(D)(m) (West 1996)). On September 11, 1998, respondents were declared unfit parents based solely on their failure to make reasonable progress, and their parental rights were subsequently terminated. T.B.'s father was also declared unfit but is not a party to this appeal. Respondents appeal, arguing the petition to terminate parental rights was not sufficient because they were not given 12 months from the date of removal to improve conditions in their home, and the evidence did not support the finding they were unfit. We affirm.
The respondents first argue the trial court could not terminate their parental rights for failure to make reasonable progress within 12 months of the adjudication of neglect because 12 months had not elapsed since their children were removed from their home. At the time the children were adjudicated neglected, section 1(D)(m) of the Adoption Act provided, as a ground for unfitness:
"Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 12 months after an adjudication of neglected minor, abused minor or dependent minor under Juvenile Court Act or the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(m) (West 1996).
*481 The State counters that the respondents waived this argument by failing to present it at trial and that the statutory period started running from the date the respondents' children were adjudicated neglected, not the date the children were removed from the home. Over 12 months had passed since the respondents' children were adjudicated neglected before the respondents' parental rights were terminated.
We will not apply waiver and will address the merits of the respondents' argument. Illinois Supreme Court Rule 366 (155 Ill.2d R. 366(b)(1)(i)) provides that "[a]ny error of law affecting the judgment or order appealed from may be brought up for review." Pursuant to Rule 366, we may overlook waiver where an appeal presents a substantial question as to whether a petition to terminate parental rights states a cause of action. In re J.P.S., 198 Ill.App.3d 633, 634, 556 N.E.2d 268, 269-70, 144 Ill.Dec. 801 (1990).
The parties argue the application and interpretation of the 12-month improvement period. However, the legislature has recently amended section 1(D)(m) of the Adoption Act to provide that a parent of a child adjudicated neglected is given only nine months to correct the conditions that were the basis for removal of the child before his parental rights can be terminated. Pub. Act 90-27, § 45, eff. January 1, 1998 (1997 Ill. Laws 1488, 1489); Pub. Act 90-28, § 10-25, eff. January 1, 1998 (1997 Ill. Laws 1575, 1576). This amendment took effect after the children were adjudicated neglected, but before the 12-month period had run and before the petition to declare respondents unfit was filed.
When a statute is amended while an appeal is pending, we are to apply the law by its terms at the time of the appeal, unless doing so would interfere with a vested right. The supreme court has rejected more conservative approaches that emphasize the distinction between procedural and substantive rights, or that apply a law prospectively only absent a clear expression that the statute is to be applied retroactively. First of America Trust Co. v. Armstead, 171 Ill.2d 282, 288-89, 215 Ill.Dec. 639, 664 N.E.2d 36, 39 (1996).
The first version of section 1(D)(m) was added to the Adoption Act in 1973. Pub. Act 78-854, § 1, eff. October 1, 1973 (1973 Ill. Laws 2616, 2617). This amendment provided a parent was unfit if he failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from his parents or to make reasonable progress toward return of the child to his parents within 24 months after an adjudication of neglect. 1973 Ill.Rev.Stat., ch. 4, par. 9.1-1(D)(i). In In re Ladewig, 34 Ill.App.3d 393, 398, 340 N.E.2d 150, 153-54 (1975), the first district rejected a claim that this amendment was unconstitutional as ex post facto legislation, because the section was not criminal in nature and because the section did not affect any vested property right of the parent. The Ladewig opinion presumed, as a starting point for its analysis, that the section was to be applied retroactively to parents of children who had been adjudicated neglected at the time the amendment went into effect.
We hold Public Acts 90-27 and 90-28 apply to this case. As Ladewig indicates, a parent's obligation to improve once his child is adjudicated neglected does not amount to a vested right to improve in that period. Section 1(D) of the Adoption Act lists the statutory grounds that will support a finding of unfitness, not a list of parental rights. In re B.R., 282 Ill.App.3d 665, 670, 218 Ill.Dec. 404, 669 N.E.2d 347, 351 (1996). Therefore, under the retroactivity analysis of First of America Trust, the acts apply retroactively and shorten the period for improvement as to those children already adjudicated neglected. This holding is consistent with Ladewig. The recent amendment, reducing the period for parental improvement to nine months, applies in this case.
Respondents also argue the evidence here did not support the trial court's decision that they were unfit. A finding of parental unfitness must be supported by clear and convincing evidence. The findings of the trial court must be given great deference since it has the opportunity to view and evaluate the testimony of the witnesses, and the trial court's decision should not be reversed on appeal unless it is contrary to the *482 manifest weight of the evidence. In re L.L.S., 218 Ill.App.3d 444, 458, 160 Ill.Dec. 804, 577 N.E.2d 1375, 1385 (1991), quoting In re Allen, 172 Ill.App.3d 950, 956, 123 Ill.Dec. 184, 527 N.E.2d 647, 651 (1988).
Section 1(D)(m) provides for a finding of unfitness if the parent either fails to make reasonable efforts or fails to make reasonable progress during the nine months following the adjudication of neglect. 750 ILCS 50/1(D)(m) (West Supp.1997).
The amendment to section 1(D)(m) also negates respondents' argument that reasonable progress toward return of the child must be made within 12 months of the child's removal, not within 12 months of the adjudication of neglect. The amended statute not only changes that time period to nine months but clarifies:
"Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act. If a service plan has been established as required under Section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then, for purposes of this Act, `failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care within 9 months after the adjudication under Section 2-3 or 2-4 of the Juvenile Court Act of 1987." (Emphasis added.) 750 ILCS 50/1(D)(m) (West Supp.1997).
Whether a parent's efforts are reasonable involves a subjective judgment based upon the amount of effort that is reasonable for a particular person. In contrast, whether a parent's progress is reasonable involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. L.L.S., 218 Ill.App.3d at 459, 160 Ill.Dec. 804, 577 N.E.2d at 1385; Allen, 172 Ill.App.3d at 956, 123 Ill.Dec. 184, 527 N.E.2d at 651-52.
Here, the trial court based its finding of unfitness solely on the failure of the parents to make reasonable progress. Reasonable progress may be found when the court, based upon the evidence, can conclude a parent's progress is sufficiently demonstrable and is of such a quality that the child can be returned to the parent in the near future. L.L.S., 218 Ill.App.3d at 461, 160 Ill.Dec. 804, 577 N.E.2d at 1387. At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification. L.L.S., 218 Ill.App.3d at 459, 160 Ill.Dec. 804, 577 N.E.2d at 1385; Allen, 172 Ill.App.3d at 956, 123 Ill.Dec. 184, 527 N.E.2d at 652.
The trial court adjudicated the children neglected when respondents admitted they failed to provide a clean and healthy environment for their children and T.B. had unexplained bruises. The standard by which progress is to be measured is parental compliance with the court's directives, the Department of Children and Family Services (DCFS) service plan, or both. L.L.S., 218 Ill.App.3d at 463-64, 160 Ill.Dec. 804, 577 N.E.2d at 1389. In this case, DCFS had several directives: first, respondents were to cooperate with DCFS; second, respondents were to learn age-appropriate discipline; third, respondents were to provide a structurally safe and protective living environment; and fourth, in counseling respondents were to address relationship issues between themselves, and Watts was to learn self-control.
On September 1, 1998, and September 11, 1998, hearings were held to determine whether respondents were fit. The court received as evidence DCFS visitation reports and heard testimony from respondents; Raquel Kroencke, respondents' caseworker; Molly Dunn, respondents' therapist; Bonita Meyers, who supervised visits after the children were removed; Michelle McQueen, a court-appointed special advocate (CASA) for *483 the children; and Sherry and Elicia Schaffer, Watts' mother and sister, respectively.
The trial court could reasonably conclude from this evidence that respondents were not cooperating with DCFS. Kroencke noted respondents did not tell her of certain budget concerns and relationship problems, such as the fact that respondents were considering separating at one point. Powell testified respondents got rid of their dog in the summer of 1997. Yet, dog feces were found on a bed in the house in November 1997, and DCFS reports submitted into evidence indicated respondents kept the dog and hid it at a relative's home during visits. The trial court could also reasonably conclude respondents had not made progress in enforcing age-appropriate discipline. Kroencke and Meyers testified respondents did not follow through with the disciplinary techniques they were taught.
The trial court could also reasonably conclude respondents had still not created a clean and safe living environment for the children. At the time the children were adjudicated neglected, the house had a severe roach infestation, the floors were not kept clean, the house smelled of urine, and feces from respondents' pet dog, cat, and guinea pigs were not cleaned up. During the improvement period, dog feces were found on beds. Roaches were still present. At one visit, Powell handed T.B. a glass of water with a roach in it. There were roaches in the children's toy box, and at one point, Kn.P. was found playing with one. Kn.P. was also found playing with a sharp cable wire. Meyers testified she spoke with respondents about the wire three or four times before Powell removed it. Kroencke testified that, as of April 1998, respondents were keeping their floors and walls clean, but they were not doing so consistently.
The trial court could reasonably conclude respondents failed to address Watts' self-control issues and relationship issues between respondents in counseling. Dunn testified she made no progress in counseling on respondents' relationship issues. According to Meyers, Powell slapped Watts in front of the children during one visit. Dunn and Kroencke testified that respondents fought over parenting responsibilities, and relationship problems between respondents kept the children from being a priority. McQueen testified the relationship did not change, respondents focused on themselves rather than the children, and they fought over who would care for the children. Respondents contemplated separation, but then changed their minds. At one point, Powell indicated he did not want the children if he and Watts separated, though he later changed his mind. He also threatened suicide if they separated, but later claimed he was joking. Meyers testified one visit had to be ended early because Watts disturbed the children by becoming upset over visitation terms. On another occasion, according to Meyers, Powell talked to the children inappropriately about his problems with Watts.
The trial court could reasonably conclude Watts failed to make reasonable progress in managing her anger, since she did not address the issue in counseling and refused to acknowledge she harmed T.B. See In re A.H., 215 Ill.App.3d 522, 531, 159 Ill.Dec. 32, 575 N.E.2d 261, 267 (1991). Respondents argue the children were adjudicated neglected, not abused. However, there is no requirement that DCFS prove a reasonable relationship between service goals and the neglect adjudication (In re Perez, 173 Ill. App.3d 922, 930-31, 123 Ill.Dec. 693, 528 N.E.2d 238, 243-44 (1988)), and the court may consider conditions that became apparent after the adjudication of neglect (In re C.S., 294 Ill.App.3d 780, 790, 229 Ill.Dec. 225, 691 N.E.2d 161, 167-68 (1998)). The neglect petition alleged unexplained bruises on T.B., and the children were removed in April 1997 due to a report of suspected abuse. Dunn feared for the safety of the children if the family were reunified. Respondents argue Watts should not be held responsible for the failure to address anger management, because Dunn testified they simply did not reach the issue in counseling. However, Dunn testified they failed to address the issue because of their lack of progress on other relationship issues.
Meyers testified she often had to draw respondents' attention to the needs of their children, and Kn.P., the youngest child, was *484 often left unattended. Once, when left unattended, Kn.P. placed a plastic bag over her head. At one point, respondents left Kn.P. unattended in a flotation device in the water at a public pool. On two occasions during supervised visits, Kn.P. wet herself because her parents ignored her requests to go to the bathroom.
Respondents note that several of their problems were caused by Watts' mental health concerns and that, since she started taking Prozac, the problems have abated. They also point to testimony that they did make some progress. A July 1997 visit report indicates they initially met several service goals. The record shows they attended several parenting classes and counseling-sessions, they sprayed their house for roaches more than once, they eventually got rid of their pets, they cleaned their house somewhat, they finally decided they would, in fact, stay together, and they made at least nominal attempts to use the new disciplinary methods taught to them.
All of these facts support a finding of reasonable efforts on their part, but not a finding of reasonable progress. We note:
"Whether a small amount of progress is `reasonable' must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child." In re Austin, 61 Ill.App.3d 344, 350, 19 Ill.Dec. 37, 378 N.E.2d 538, 542-43 (1978).
The trial court considered the scope of respondents' problems, the threats they pose to the children, and the need for the children to move on with their lives and determined that the progress respondents made was not reasonable. On this record, we cannot say the trial court was wrong.
For all of the above reasons, we affirm.
Affirmed.
GARMAN and MYERSCOUGH, JJ., concur.