(No. 41392.-

THE PEOPLE *ex rel.* John J. Stamos, State's Attorney, Appellant, *vs.* PUBLIC BUILDING COMMISSION OF CHICAGO *et al.,* Appellees.

*Opinion filed June 21, 1968.*

JOHN J. STAMOS, State's Attorney, of Chicago, (EDWARD J. HLADIS, Chief of Civil Division, RONALD BUTLER and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for appellant.

WILLIAM R. DILLION, of Chicago, for appellee Public Building Commission of Chicago.

JAMES W. COFFEY, and JOHN T. MEHIGAN, both of Chicago, for appellee Board of Education of City of Chicago.

KIRKLAND, ELLIS, HODSON, CHAFFETZ AND MASTERS, and THOMAS M. THOMAS and THOMAS F. SCULLY, all of Chicago, for appellee Chicago Park District.

RAYMOND F. SIMON, Corporation Counsel, and ROBERT WISS, Special Assistant Corporation Counsel, both of Chicago, for appellee City of Chicago.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County dismissing a *quo warranto* suit, brought by plaintiff, the State's Attorney of Cook County, challenging the constitutionality of the Public Building Commission Act, as amended in 1965, and the action taken thereunder by the defendant municipal corporations.

In dismissing the complaint, the circuit court sustained the constitutionality of sections 2 and 14c of the Public Building Commission Act, as amended, (Ill. Rev. Stat. 1967, chap. 85, pars. 1031-1054), and held that all ordinances and resolutions adopted by the Public Building Commission of Chicago, the city of Chicago, the Board of Education of Chicago and the Chicago Park District were lawful exercises of authority by such bodies.

The cause presents on the appeal the following five issues: (1) Whether the Public Building Commission Act originally, or as amended, authorizes the construction and leasing of a schoolhouse, park and related facilities; (2) whether that Act, as amended, violates the due-process clauses of the State and Federal constitutions on the grounds that (a) the enunciated standards are vague and constitute an unlawful delegation of legislative power, and (b) the Act circumvents the right of referendum in the areas to which the Act is applicable; (3) whether the Act, as amended, violates section 22 of article IV of the Illinois constitution and the equal-protection clause of the Federal constitution; (4) whether the proposed school construction program of the Board of Education of Chicago, under the Public Building Commission Act, violates the School Code; and (5) whether the action of the Chicago Park District in

donating park property to the Public Building Commission is illegal and void under the Park District Code.

The undisputed facts are that on April 2, 1968, the Board of Education of the City of Chicago, by its general superintendent, acting pursuant to certain board resolutions, presented to the Public Building Commission a plan designating the need to construct and rehabilitate public schools in the city of Chicago, in conjunction with park, recreational and other related public facilities, and requested the Commission to acquire the necessary sites and to undertake the construction of the improvements. These facilities would then be leased by the Commission to the Board of Education, the Chicago Park District, and other governmental agencies. The statement by the superintendent referred to the 200,000 increase in enrollment in the last 15 years, 20% of which was met only by using some 1100 temporary classrooms, and some 232 elementary schools and 24 high schools built before 1918, of which more than 100 buildings were constructed prior to 1898.

On the same day, the Public Building Commission adopted a resolution approving such request, and indicated its intention to undertake such emergency program.

The Board of Education and Chicago Park District, acting in concert, then proposed the construction of a public elementary school, park, and related public recreational facilities, at Ogden and Clybourn avenues in Chicago, as the initial project in the urgent program. Whereupon the Commission adopted a resolution selecting the site to be acquired for that complex. The Commission also requested the city council to approve the site, and requested the Board of Education, the city of Chicago, and the Park District to donate and convey those portions of the site they respectively held, with reverter provisions to the respective grantors when all revenue bonds and other obligations have been paid in full.

On April 10, 1968, the Board of Education requested

the city council, upon approval of the site, to donate to the Commission that portion of the site held by the city in trust for the use of schools, with the reverter provision. The resolution further advised the Commission of the Board's intention to lease from the Commission, for a term of years not in excess of 20, space and facilities for a public elementary schoolhouse and other administration and educational functions on the site selected.

The Board of Education will also enter into a lease with the Public Building Commission and will direct that the city council enact an ordinance for levying and collecting a direct annual tax sufficient to pay the annual rental under the lease.

On April 11, 1968, the Chicago Park District adopted a resolution involving similar action to that taken by the Board of Education with respect to that portion of the site owned by the Park District.

On April 17, 1968, the city council, by resolution, approved the site to be acquired in constructing the public elementary school, park, recreational and other related public facilities, and authorized the execution of deeds of conveyance of the property held by the city in trust for the use of schools to the Commission, with provision for reverter.

On May 1, 1968, the plaintiff filed a three-count complaint in *quo warranto* against the defendant public bodies, alleging substantially the foregoing sequence of events and challenging the aforesaid plan under the Public Building Commission Act, as amended. (Ill. Rev. Stat. 1965, chap. 34, pars. 3301-3325.) In 1967 this Act was transferred from chapter 34 to chapter 85 so that it now is Illinois Revised Statutes, chapter 85, pars. 1031-1054.

On May 7, 1968, defendants' motion to strike each of the counts was sustained, and the complaint in *quo warranto* was dismissed. Notice of appeal was filed the same day, and on motion an order was entered by a justice of

this court setting the case for hearing at the May term of this court on grounds of extraordinary importance.

On this appeal it is incumbent to determine first whether the Public Building Commission Act, either originally, or as amended in 1965, authorized the construction and leasing of an elementary school and the related park and recreation facilities, as contemplated in the proposed project. Defendants contend, and plaintiff denies, that the Public Building Commission Act, both prior and subsequent to the 1965 amendments, authorized the proposed multi-governmental project.

The original Public Building Commission Act of 1955 (Ill. Rev. Stat. 1955, chap. 34, pars. 256-279) applied to counties and county seats. Section 2 recited the statutory objectives. In substance it recognized the existence of "inadequate and outmoded public buildings and facilities in use in the conduct of local government by the various branches, departments and agencies thereof;" and that "by reason of the age of such public buildings and the increased activities on the part of both the citizen and his local government, they are no longer adapted or adequate to meet the needs of the growing population; that as a consequence thereof there are many counties, cities, and other branches and agencies of government within this State which are compelled to spend large sums of money annually in the rental, operation and maintenance of additional building space to house the various branches, departments and agencies of government to meet this everincreasing need; * * * that these conditions impair the efficient, economical and indispensable governmental functions of the various branches and agencies of government and that, in order to eradicate these conditions," it is "necessary and desirable to make possible the construction, acquisition, or enlargement of buildings to be made available for use by governmental agencies with the intent and purpose of centralizing, insofar as is practicable, the activi-

ties of the different branches of government; * * *."

Pursuant to that intent, the original 1955 Public Building Commission Act empowered a public building commission, under section 14(c) "To demolish, repair, alter or *improve* any building or buildings within the area and to erect a new building or buildings, and *other facilities* within the area." (Emphasis supplied) Under clause 14(h) the Commission was empowered "To rent all or any part or parts of such building, buildings *or other* facilities to any municipal corporation which organized or joined in the organization of the Public Building Commission or to any branch, department or agency thereof, or to any branch, department or agency of the State or Federal government, or to *any other municipal corporation,* quasi-municipal corporation, political subdivision or body politic or agency thereof, doing business, maintaining an office or rendering a public service in such county seat or county * * *." (Emphasis supplied.) The Act also empowered the Commission to execute written leases evidencing the written agreements.

It should be noted that the broad language of the original statute itself contemplates the leasing of both buildings and facilities to many different units of government. The 1955 Act in no way limits the type of structures to be built; and specifically authorizes the construction of "facilities" as well as buildings. The thrust of its concern is that outmoded and outdated buildings and facilities impair indispensable governmental functions, and to eradicate that evil the device of public building commissions was developed. Such commissions would be charged with the acquisition of land and other property, the construction and improvement of buildings or other facilities. The foregoing provisions clearly evidence a legislative intention to permit the type of school, park and recreational facilities program envisaged herein.

In addition, the statutes enacted since the 1955 Public

Building Commission Act, and even prior to the 1965 amendments, further evidence such a legislative intention. These intervening statutes include the 1955 amendment to the School Code (chap. 122, par. 34—20a (now 34—21.1)) authorizing the Board of Education of Chicago to enter into a lease with the Public Building Commission for office and other space for its administrative functions; the 1957 amendment to the School Code (chap. 122, par. 15—22) authorizing school districts generally to enter leases with Public Building Commissions for office or other space for their administrative or *educational functions;* and the 1955 amendment to the Park District Act (chap. 105, par. 333.15a) authorizing the Park District to lease office or other space for its administrative corporate functions.

In authorizing school districts generally to lease schoolhouses from a public building commission, as provided in the 1957 amendment, the legislature would have been acting aimlessly and inconsistently if it had not already empowered public building commissions to construct schoolhouses under the 1955 Public Building Commission Act.

To construe these statutes as permitting all other school districts, except the Board of Education of Chicago, to lease schoolhouses from a public building commission, and to permit said Board of Education to lease only administrative buildings would be contrary to the purport of the Public Building Commission Act to eradicate the evil of outmoded and inadequate structures and facilities, and in flagrant disregard of the facts appearing in the superintendent's statement.

Furthermore, since the Board of Education and the Chicago Park District could donate property to the Public Building Commission, it would indeed be incongruous if they could not then lease that donated real property after it had been improved by the Public Building Commission in accordance with the objectives of the Act.

From the analysis of the purport, content, and constitu-

tionality of the 1955 Public Building Commission Act in *People ex rel. Adamowski* v. *Public Building Com.,* 11 Ill.2d 125, 131, the Act was designed to provide an alternative means for meeting the urgent need of local public bodies for buildings, improvements and facilities. Furthermore, the fact that the court at p. 134 took cognizance that concurrent with the enactment of the Public Building Commission Act the legislature amended the Counties Act, the Sanitary District Act, the School Code, the Park District Act, and the Cities and Villages Act to permit municipal corporations to participate in a public building commission, emphasizes that the court regarded the Act as contemplating multi-governmental projects.

Moreover, it should be noted that since the passage of the Act in 1955, this court has approved a variety of public projects undertaken by public building commissions combining the building needs of various units of local government. *Bowman* v. *County of Lake,* 29 Ill.2d 268; *Berk* v. *County of Will,* 34 Ill.2d 588.

Thus, it is evident from our interpretation of the terms and provisions of the 1955 Act and its construction in the *Adamowski* and other cases, that the Act in no way barred the construction of the complex of a schoolhouse, park, and recreation facilities under the circumstances herein, involving hundreds of outmoded buildings required to be utilized in the conduct of local government.

Plaintiff contends further that if the proposed school, park and recreational facilities project is deemed within the purview of the 1965 amendments, particularly sections 2 and 14(c), which authorize the Act to be applied to municipalities with a population over 3,000 by referendum, and authorize commissions to construct improvements and facilities for use by governments in the furnishing of essential governmental, health, safety and welfare services, such amendments are unconstitutional.

Plaintiff first asserts that the amendments offend the

due-process clauses of the State and Federal constitutions, and constitute an unlawful delegation of legislative power. In support thereof plaintiff contends that the standards are too vague, that the word "essential" renders the Act invalid *per se,* and that these amendments circumvent the right to referendum in the areas where the Act applies.

In the interest of clarity, the controverted section 14(c) (chap. 85, par. 1044(c)) is set forth with the amended phraseology italicized: "To demolish, repair, alter or improve any building or buildings within the area or areas and to erect a new building or buildings, improvement and other facilities within the area or areas *to provide space for the conduct of the executive, legislative and judicial functions of government, its various branches, departments and agencies thereof and to provide buildings, improvements and other facilities for use by local government in the furnishing of essential governmental, health, safety and welfare services to its citizens.* To furnish and equip the same and maintain and operate such building or buildings, improvements and other facilities so as to effectuate the purposes of this Act."

Due process of law, as guaranteed by the fourteenth amendment of the Federal constitution and section 1 of article IV and article III of the Illinois constitution, requires that an act shall not be vague, indefinite or uncertain, and must provide sufficient standards to guide the administrative body in the exercise of its functions. (*Vallat* v. *Radium Dial Co.,* 360 Ill. 407, 410.) The established principles applicable to the constitutional prohibition of a delegation of legislative power have recently been reviewed in *Hill* v. *Relyea,* 34 Ill.2d 552, where the court stated at p. 555: "There is a distinction between the delegation of true legislative power and the delegation to a subordinate of authority to execute the law. [Citation.] The former involved a discretion as to what the law shall be; the latter is merely an authority or discretion as to its execution, to be exer-

cised under and in pursuance of the law. [Citations.] It is an established rule that the General Assembly cannot delegate its general legislative power to determine what the law shall be. However, it may delegate to others the authorto do those things which the legislature might properly do, but cannot do as understandingly or advantageously. [Citations.] Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement, [citations,] and the precision of the permissible standard must necessarily vary according to the nature of the ultimate objective and the problems involved. [Citations.]"

In *People ex rel. Adamowski* v. *Public Building Com.,* 11 Ill.2d 125, 146, 147, this court rejected the argument that any portion of the original section 14 of the Act was too broad or had the effect of conferring what the law should be. The court noted that the powers and objects of a commission are expressly defined in other provisions of the Act, that the isolated language relied upon affords no basis to say the entire Act is indefinite and uncertain, and that "recourse to the entire act is sufficient to defeat that contention." The court further explained at p. 147: "The limitations contained in the sections show clearly that a commission is given no discretion as to what the law shall be, but only some discretion as to its execution which must be exercised under and in pursuance of the law. [Citation.] Moreover, this court has long held that to establish the principle that whatever the legislature shall do it shall do in detail or else it will go undone, would in effect destroy our scheme of government. [Citations.] Accordingly, we have held that the legislature may constitutionally delegate to the municipal corporations it creates the power to legislate on matters of purely local concern connected with their municipal affairs, [citations,] and such functions as may

be more advantageously performed by the municipal corporation. [Citations.] The powers conferred by the act in question do not transcend these concepts."

The amendments of 1965 effected no unbridled, indefinite delegation of new authority. Quite the contrary, the added phraseology relating to the *executive, legislative and judicial* functions of government, and referring to facilities in the furnishing of essential governmental, health, safety and welfare services, merely particularized the government functions and restricted the types of buildings and facilities that can be created. In other words, the amending language clarifies and particularizes, rather than expands, the authority conferred in the original Act.

There still exist the original requirements that before action can be taken by the Commission there must be a finding of outmoded and inadequate buildings and facilities which impair the efficient, economical and indispensible government functions of the various branches and agencies of government, and the action taken must be designed to eradicate those conditions, and to "centralize insofar as practical" the activities of the different branches of government and to effectuate the purposes of the Act.

It cannot be seriously contended that the phrase "governmental service" encompasses all forms of human activities, as plaintiff contends. Quite the contrary, that phrase has a well established meaning, particularly when included in the same paragraphs with references to the executive, legislative and judicial functions of government. Nor can the word "essential" be extracted out of context and labelled "vague." In fact, this court used that precise word in sustaining the constitutionality of the original Public Building Commission Act in the *Adamowski* case (11 Ill.2d at 131) to explain that the Commission had a mandate to carry out "essential governmental functions."

Further restrictions on the actions of a public building commission are imposed by the Act. Under section 14(a)

its power is restricted to its territorial limits, and any site selected shall be conveniently located and of a size to accomplish the purpose of the Act.

The most cogent factor negating any unconstitutional delegation of power is the requirement of the Act of the determination of need to accomplish the purposes of the Act by local authorities. The General Assembly cannot properly determine the local governmental requirements of 102 counties, 102 county seats, and other qualifying municipalities in the State. This particular subject of outmoded public buildings and facilities impairing the operations of local government is peculiarly a subject which could be more "understandably and advantageously" administered by local municipal corporations, as the Act provides.

It is therefore evident that the legislative standards contained in the Public Building Commission Act are more than sufficient to satisfy the requirements of due-process clauses of the State and Federal constitutions, and article III of the Illinois constitution.

Nor does the Act in any way violate the due-process clause by circumventing the statutory pattern granting the right to referendum in the area to which the Public Building Commission Act applies.

Admittedly, certain laws specify referenda on bond issues, or the raising of tax rates for certain objects. However, there is no constitutional right to a referendum for the construction, acquisition or enlargement of specific public improvements, buildings and facilities, and the failure to provide for such a referendum in the Public Building Commission Act does not constitute a deprivation of due process of law, or a violation of section 22 of article IV of the Illinois constitution prohibiting special laws. *Christen v. County of Winnebago*, 34 Ill.2d 617, 618; *Berk v. County of Will*, 34 Ill.2d 588; *Bowman v. County of Lake*, 29 Ill.2d 268, 279.

The constitutionality of the financing procedure under

the Public Building Commission Act was implicitly recognized in *Berk* v. *County of Will,* 34 Ill.2d 588, involving "the construction of the Will County courthouse and city hall for the City of Joliet," by the Will County Public Building Commission.

In *Bowman* v. *County of Lake,* 29 Ill.2d 268, 276, 279, this court also gave approval to the constitutionality of this mode of financing public buildings without referendum. It was argued that under this mode the county tax rate could exceed the constitutional limit because of the rental charged by the Public Building Commission. In rejecting that argument, the court held that it is no measure of the constitutionality of the Act that the rate necessary to pay the rental authorized may in the future cause the total county rate to be excessive, as it is presumed that the county authorities will act in a proper manner.

The next major issue asserted by plaintiff is that the 1965 amendments, by extending the authority to create a public building commission to municipalities having a population of 3,000, subject to a referendum, creates an unreasonable or arbitrary classification, in violation of section 22 of article IV of the Illinois constitution, and the equal-protection clause of the fourteenth amendment of the Federal constitution.

The alleged arbitrary classifications are twofold: (1) between municipalities, regardless of population, which are county seats and other municipalities over 3,000; and (2) between municipalities, other than county seats, which have a population of more than 3,000 and those municipalities with a population of less than 3,000.

The constitutionality of the original classification between county seats and other municipalities in the Public Building Commission Act was sustained in *People ex rel. Adamowski* v. *Public Building Com.,* 11 Ill.2d 125, 148-149. The court explained at p. 149 that the Illinois constitu-

tional provision does not prohibit the legislature from classifying persons and objects for the purpose of legislative regulation or control, and from passing laws applicable only to such persons or objects, provided there is a reasonable basis for differentiating between the classes. The court then stated at p. 149: "Nor do the provisions vesting initiative in the government of the county seat * * * effect an arbitrary or discriminatory classification. That there is a substantial difference in the situation and public building needs of a municipality which houses a county seat and one that does not, is readily apparent. * * * Additionally, it is largely in county seats the inconvenience of decentralization are felt, due to the fact that both local and county governments function there, and because liaisons with higher governmental agencies usually occur there. It is true that the municipalities located outside the territorial limits of a county seat may be confronted with similar building problems but such fact does not have the effect of making the classification discriminatory."

The Illinois legislature did, in fact, subsequently recognize that the building and facilities problems of other municipalities also required amelioration, and thereupon enacted the 1965 amendments making the Public Building Commission Act applicable to municipalities over 3,000 in population, by referenda. The fact that the General Assembly saw fit to authorize such municipalities which are not county seats to determine by referendum whether a Public Building Commission shall be created, and did not give that privilege of referendum to county seats, does not perforce invalidate the initial classification between county seats and other municipalities, which was sustained in the *Adamowski* case.

With respect to the constitutionality of the further classification in the 1965 amendments between municipalities of 3,000 or more and those with lesser populations, the

criterion is whether such classification bears a reasonable relation to the purposes of the Act.

In addition to the presumption that the legislature properly surveyed the conditions prevailing in municipalities before enacting the classification (*DuBois* v. *Gibbons,* 2 Ill.2d 393, 399), the recital in section 2 of the Act of the need for the applicability of the Act to municipalities over 3,000 is entitled to weight. (*People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539.) Furthermore, such classification will not be set aside unless clearly unreasonable and palpably arbitrary. *Supervisors of Boone County* v. *Rainbow Gardens,* 14 Ill.2d 504, 512.

The court in the *Rainbow Gardens* case held that it is established under Illinois case law that the legislature has power to classify municipal corporations on the basis of population, and to enact laws applicable to each class, where there is a reasonable basis for the classification in view of the statutory objective, and that "those who attack the classification have the burden of proving its unreasonableness."

In the instant case it is patent that municipalities with a population over 3,000 are likely to require more public buildings and facilities, and to involve more branches of government, and engage in more activities that require space, than smaller communities. Hence, the classification which permits the larger communities to create or participate in a public building commission as an additional means for meeting such needs is certainly not arbitrary, but rather in accordance with the statutory purpose of the Public Building Commission Act. Therefore, it is not conceivable how this amendment to the Act offends the equal-protection clause of the Federal constitution, or violates section 22 of article IV of the Illinois constitution.

Plaintiff presents the further argument that the actions and proposed program of the Board of Education under the Public Building Commission Act violate the School

Code. Specifically, plaintiff asserts as unlawful the Board's intention to lease a schoolhouse from the Commission, the Board's direction that school property be donated to the Commission, and the Board's request that the city council levy a tax to cover the costs of operation under such a lease.

These contentions are entirely without merit in view of the plain terms of the laws. The legislature has expressly included school districts, such as the Board of Education of Chicago, within the definition of a "municipal corporation," under the Public Building Commission Act. (Chap. 85, par. 1033(e).) Section 13 of that Act (chap. 85, par. 1043) expressly authorizes a public body which has joined in the organization of a Public Building Commission, such as the Board of Education herein, to donate its property to the Commission. Section 14(b) (chap. 85, par. 1044(b)) further provides in substance that municipal corporations may convey real property to the Commission with a provision in such conveyance for reverter to the transferor at such time as all revenue bonds and other obligations incident to such real property have been paid in full.

Paragraphs (c) and (h) of section 14 (chap. 85, pars. 1044(c) and (h)) authorize the Commission to erect buildings thereon and to rent the same to public agencies for a period up to 20 years; and provide that the lessees shall obligate themselves to pay the cost of maintaining and operating the leased premises.

The foregoing provisions of the Public Building Commission Act in no way conflict with article 34 of the School Code, which governs the Board of Education. The general powers of the board are set forth in section 34—18, which includes authority "to make suitable provisions for the establishment and maintenance of schools of all grades and kinds." It is specifically provided that the powers granted are not exclusive. The law states: "The specifications of the powers herein granted are not to be construed as exclusive, but the board shall also exercise all other powers that may

be requisite or proper for the maintenance and the development of a public school system, *not inconsistent with the provisions of this Code which apply to all school districts."* (Italics added.)

As previously noted, section 34—21.1 provides, in addition to other powers, that the Board has authority to lease from the Public Building Commission any real or personal property for the purpose of securing office or other space for its administrative functions. Section 22—17 of the School Code provides that *any school district* shall have power, *"In addition to other powers and authority now possessed by it,* * * *: (1) To lease from any public building commission, created pursuant to the provisions of the Public Building Commission Act, * * * any real or personal property for the purposes of securing office or other space for its administrative *or educational functions* * * *."* (Italics added.)

In the light of these express provisions in the Public Building Commission Act and in the School Code, this court cannot find merit in plaintiff's interpretation, which would permit all school districts, except the Board of Education of Chicago, to lease schoolhouses, and would limit the Board of Education to leasing "administrative facilities." Such an interpretation not only renders nugatory the Public Building Commission Act as applied to the Board of Education, but violates the terms of the statutes.

The provisions of article 22 of the School Code are applicable to all school districts, and section 34—18 specifically recognized that the Chicago Board of Education shall have such additional powers which are not inconsistent with those provisions of the School Code which are applicable to all school districts. Therefore, it is evident that the Board of Education of Chicago cannot be denied the right to lease a schoolhouse from the Public Building Commission—a right which is specifically conferred in section 22—17.

This court, moreover, takes note of the previously mentioned acts of the Public Building Commission, the Board of Education and the city of Chicago in effectuating the emergency program designed to cope with the patent inadequacies of Chicago school buildings and facilities. Such acts were taken in furtherance of the plan to improve the site with a complex of school, park and recreational facilities for the full utilization of such property for the benefit of the school children during the school terms and hours, and for the general public at other periods, as authorized by constitutional statutes. Hence, plaintiff's charge that such acts were unlawful is without substance.

Plaintiff further asserts that the Board of Education of Chicago has no authority to cause the city council to enact an ordinance to pay the annual rental due under a lease with the Public Building Commission, because such tax is not included within the statutory tax limits, and is in excess thereof.

Although section 34—53 of the School Code sets forth maximum tax levies, their purposes and rates, and section 34—49 of that Code requires that no liability be incurred unless by appropriation or as authorized in section 34—21.1, these statutes must be construed in the light of the Public Building Commission Act. Section 18 of that Act (chap. 85, par. 1048) specifies in effect that whenever a municipal corporation having taxing power enters into a lease with a Public Building Commission, such municipal corporation shall provide by ordinance for the levy and collection of a direct annual tax sufficient to pay the annual rent payable under such lease, and that such tax "shall be in addition to all other taxes now or hereafter authorized to be levied by that municipal corporation," and not "included within any statutory limitation of rate or amount for that municipal corporation but shall be excluded therefrom and be in addition thereto and in excess thereof."

Under those circumstances, it has been held that where

the act providing for the additional tax is a complete act in itself, it modifies the limitations in the existing statutes. (*People ex rel. Gill* v. *Devine Realty Trust,* 366 Ill. 418; *People ex rel. Toman* v. *Dunkirk Bldg. Trust,* 377 Ill. 459.) More specifically, this court in *People ex rel. Adamowski* v. *Public Building Com.,* 11 Ill.2d 125, noted the amending effect of the Public Building Commission Act on the tax rate limitations of other statutes, and held that the Act being complete in itself could change or modify existing legislation and did not become unconstitutional or illegal thereby.

Plaintiff's argument that the tax may not be levied for the payment of rent under the contemplated lease because the language of section 18 of the Public Building Commission Act refers to "municipal corporations having taxing powers," and the Board of Education does not have direct power to levy taxes, is merely an exercise in semantics. Although the Board of Education cannot technically levy taxes, it does have taxing powers for its various school purpose funds; and the annual levy of such taxes are made by the city council under section 34—55, "upon the demand and under the direction of the Board of Education." Such taxes can in no way be deemed "city taxes," but are plainly taxes of the Board of Education. Consequently, the Board properly qualifies as a municipal corporation having taxing powers under section 18 of the Public Building Commission Act.

Nor does this court find persuasive plaintiff's further argument that the Board of Education has no authority to have levied the additional tax to pay operation and maintenance costs. Although section 34—21.1 of the School Code provides that the cost of operation and maintenance must be included in the annual school budget, that does not determine that such expense cannot be provided for by an additional tax. The authority for that additional tax for

the annual rent due under the lease with the Public Building Commission is conferred specifically by the terms of section 18 of the Public Building Commission Act, which provides that it shall be in addition to all other taxes, now or hereafter authorized to be levied by the municipal corporation.

Plaintiff argues finally that the actions and proposed program of the Chicago Park District to donate property to the Public Building Commission is unauthorized and void. It is undisputed that the Chicago Park District is a State agency deriving its existence from the legislature, which has the power to define and modify the powers of the Park District. (*People* v. *Kelly*, 357 Ill. 408, 413; *Kocsis* v. *Chicago Park District*, 362 Ill. 24, 30, 31.) In the exercise of its power over municipal corporations, the legislature enacted the Public Building Commission Act, and by the terms of that Act the legislature authorized municipal corporations, which include park districts, to donate real property to the public building commission they joined in organizing, for the purpose of constructing, maintaining and operating needed public improvements.

The Public Building Commission Act, being a complete act, may constitutionally amend other acts without reference to such acts. *People ex rel. Adamowski* v. *Public Building Com.*, 11 Ill.2d 125; *Bowman* v. *County of Lake*, 29 Ill.2d 268; *Berk* v. *County of Will*, 34 Ill.2d 588.

Thus, the Public Building Commission Act in effect adds to the powers and authority of the Chicago Park District granted by the Park District Code. Although the Park District has authority to "acquire and hold real property for corporate purposes" under the Park District Code, the legislature has also specifically included park districts within the definition of municipal corporations, and as such they may convey real property to the Public Building Commission. The Commission can construct facilities on such

site, and lease them to the Park District, or to any municipal corporation which joined in the organization of the Public Building Commission.

Here the record shows that the property donated by the city and the Park District is to be devoted to an integrated system of park and field houses and school buildings—also used as park field houses—so that such park lands and buildings will be made available to the public. Such a program is wholly consistent with the purposes of the Public Building Commission Act. Therefore, the action of the Park Commissioners pursuant to their proposed program could in no way be deemed void.

The judgment of the circuit court dismissing plaintiff's *quo warranto* suit is affirmed.

*Judgment affirmed.*