(No. 44010.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. MELVIN B. PALKES, d/b/a MADISON IRON &
METAL COMPANY, Appellee.

*Opinion filed October 2, 1972.*

UNDERWOOD, C.J., concurring in part and dissenting in part.

WILLIAM J. SCOTT, Attorney General, of Springfield (FRED G. LEACH, Assistant Attorney General, of counsel), for the People.

MARVIN E. ASPEN and LAWRENCE G. FRETZIN, both of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

A criminal complaint was filed in the circuit court of Madison County charging the defendant with having purchased in excess of 50 pounds of copper and failing to

report the same in violation of the Copper Purchase Registration Law. (Ill.Rev.Stat. 1969, ch. 121½, par. 321 *et seq.*) Defendant filed a motion to dismiss the complaint, challenging the constitutionality of the Act. The court allowed the motion and dismissed the complaint.

The motion alleges five constitutional grounds for dismissing the complaint. The first charges that by making the Act inapplicable to counties of over one million population the legislature created an unreasonable and arbitrary classification in violation of the due-process and equal-protection clauses of the fourteenth amendment of the Federal constitution and the due-process clause of the State constitution.

The second allegation is that the Act is so vague as to violate the due-process clauses of the State and Federal constitutions.

The third allegation charges that the provisions of the Act violate section 22 of article IV of the Illinois constitution which prohibits special legislation.

The fourth allegation asserts that the provisions of the Act constitute an unauthorized delegation of police power.

The fifth allegation charges that the provisions of the Act violate the constitutional rights against self-incrimination guaranteed by the Illinois and Federal constitutions.

The third and fifth allegations are but general assertions of violations of certain constitutional provisions without in any manner specifying how these provisions were infringed. This court has held that constitutional issues cannot be raised by such general allegations. *In re Simaner, 15 Ill.2d 568; Biggs v. Cummins, 5 Ill.2d 512; Jewel Tea Co. v. Rowe, 414 Ill. 495.*

The second and fourth allegations are likewise general in nature and lacking in the degree of specificity which could reasonably be expected to be of assistance to a court in considering constitutional questions. However, in addition to charging a constitutional violation, each allegation in a general way directs the court's attention to the nature

of the violation sufficient to warrant the consideration of the issues.

The second allegation charges a violation of due process of law by reason of the vagueness of the statute. No specific word or phrase of the statute is singled out as being vague or uncertain. The Supreme Court in *Connally v. General Construction Co., 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126,* stated that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. See also *Hershey Manufacturing Co. v. Adamowski, 22 Ill.2d 36.*

The defendant is charged with having purchased in excess of 50 lbs. of copper which he failed to report within 72 hours after the date of the purchase. By referring to the statute (Ill.Rev.Stat. 1969, ch. 121½, par. 323) it is readily ascertainable that except as provided in section 5 of the Act (par. 325) every copper dealer shall enter in triplicate on forms provided by the Department of Public Safety or such department as may succeed to its functions, for each purchase of copper of 50 lbs. or more certain specified information. This section further requires that one copy of the completed form shall be kept in a separate book or register by the dealer and that within three days from the day of purchase one copy of the completed form shall be filed in the office of the county clerk of the county in which the copper was purchased and one copy shall be filed with or mailed to the Department of Public Safety or such department as may succeed to its functions. The term "copper dealer" is defined in section 2 (par. 322) of the Act.

In reading the statute it is readily ascertainable that the specific acts that the defendant is charged with having failed to perform are required by the statute, and section 8 of the Act (par. 328) provides that any copper dealer who knowingly fails to comply with the Act is guilty of a

misdemeanor. As applied to this defendant and the charges made against him in the complaint, the statute is not vague or uncertain.

As to defendant's fourth allegation that the provisions of the Act constitute an unauthorized delegation of police power, here again defendant has not indicated what part of the Act he is criticizing. Defendant is charged with violating the requirements of section 3 of the Act (par. 323) referred to above. Although this section of the Act represents an exercise by the legislature of the police power, the question of delegation is not involved in this particular section of the Act. We will not consider this question in this case for the same reasons that we declined to consider the search and seizure question which is discussed later in this opinion.

We have thus disposed of the second, third, fourth and fifth allegations of defendant's motion to dismiss. The remaining allegation, being the first, requires a more detailed consideration.

Section 7 of the Act provides that the Act shall not apply in any municipality which provides for registration of copper purchased where the municipal resolution, ordinance or regulation substantially complies with the substantive provisions of the Act. This section also provides that the Act does not apply in municipalities with populations of 1 million or over. The sole remaining constitutional question raised by defendant's motion to dismiss is whether the exclusion of municipalities with populations of 1 million or more from the operation of the Act constitutes an unreasonable and arbitrary classification.

In *Du Bois v. Gibbons, 2 Ill.2d 392,* this court summarized established principles of legislative classification at pages 398 and 399 as follows: "Beginning with the premise that classification is primarily a legislative function with which there should be no judicial interference except to determine whether the legislative action is clearly

unreasonable, the rule is finally deduced that a legislative classification based upon population will be sustained where founded on a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. [Citations.] " See also *Supervisors of Boone County v. Village of Rainbow Gardens, 14 Ill.2d 504; People ex rel. Adamowski v. Wilson, 20 Ill.2d 568; People ex rel. Conservation Dist. v. Lenover, 43 Ill.2d 209;* 16 Am.Jur. 2d, Constitutional Law, sec. 511.

Furthermore, we will presume that the legislature surveyed the conditions existing in the population centers of this State and pursued the various means available to the General Assembly not available to this court in informing itself of these conditions before enacting a classification based on population. This court will nullify such a classification only when it can be said that the same is "clearly unreasonable or palpably arbitrary." *Du Bois v. Gibbons, 2 Ill.2d 392, 399; People ex rel. Conservation Dist. v. Lenover, 43 Ill.2d 209, 218; People ex rel. Stamos v. Public Building Com. of Chicago, 40 Ill.2d 164, 180.*

Another established principle applicable to this case holds that those who attack the validity of the classification have the burden of proving that the same is unreasonable or arbitrary. *Supervisors of Boone County v. Village of Rainbow Gardens, 14 Ill.2d 504, 512; People ex rel. Stamos v. Public Building Com. of Chicago, 40 Ill.2d 164, 180; People ex rel. Conservation Dist. v. Lenover, 43 Ill.2d 209, 219.*

It is apparent from an examination of section 7 of the Act (par. 327) that the legislature intended to leave to the municipalities, where practicable, the policing of the evils accompanying certain sales and purchases of copper, and that the Act is to apply only in such municipalities where adequate regulations governing the purchase of copper do not exist. To accomplish this end, section 7 exempts from

the operation of the Act municipalities in which regulations are in effect covering the purchases of copper which substantially comply with the substantive provisions of the Act. In addition to exempting these municipalities, section 7 also provides that the Act does not apply in cities with populations in excess of 1 million. Chicago being the only city in the State with a population in excess of 1 million, this classification exempts only the city of Chicago from the operation of the Act.

By this exemption the legislature was not discriminating in favor of copper purchasers in the city of Chicago. Rather, it appears to be a further expression of legislative intent to leave to the cities, so far as possible, the policing of certain sales and purchases of copper. The city of Chicago has long had an ordinance covering junk dealers and peddlers, the same being chapter 143 of the Municipal Code of Chicago. In this ordinance the word "junk" is defined to include old copper and the ordinance regulates substantially the same transactions covered by the Copper Purchase Registration Law. The ordinance provides for the licensing of various classes of junk dealers. It also provides that the identity of junk purchased shall not be changed or destroyed nor shall any junk be disposed of or resold within two days after receiving or purchasing the same. The ordinance also provides that the places of business of every junk dealer shall be open to inspection at all reasonable times and provides penalties for the violation of the ordinance. Under the authority above stated a presumption exists that the General Assembly, before making the classification herein complained of, investigated and was aware of the problems of policing the evils accompanying the sale and purchase of copper which are peculiar to the city of Chicago because of the vastly different situations that exist in that city.

We will also presume that the General Assembly when making the classification was aware of the fact that the city of Chicago had an ordinance which for many years

sought to regulate substantially the same evils that the Act seeks to regulate and that the General Assembly was aware that administrative procedures for licensing, policing, revoking of licenses and handling violations of the ordinance had long been established. The fact that the method of policing the evils sought to be controlled in Chicago varies from the method used in the remainder of the State does not of itself render the classification arbitrary.

This court has held that because the city of Chicago is so much more densely populated than any other city in the State special problems in relation to law enforcement and the enforcement of police regulations exist there which justify the legislature in creating a classification which may apply only to that city. *Gaca v. City of Chicago, 411 Ill. 146; Du Bois v. Gibbons, 2 Ill.2d 392, 402.*

The burden is on the defendant to prove that the classification is unreasonable and arbitrary. The defendant has offered nothing to sustain this burden other than to point out that a purchaser of copper in Chicago is not obliged to perform the same requirements of the Act which the defendant is here charged with violating. Given the vast differences that exist in the problems of law enforcement in the city of Chicago from those that exist in other areas of the State, and given the presumptions favoring the validity of the legislative classification, the defendant has not sustained the burden of proving that the classification complained of is unreasonable or arbitrary.

In addition to the allegations contained in defendant's motion to dismiss, he now argues in this court that sections 3 and 4 of the Act which authorize inspection of the registration books and the purchased copper are violative of the State and Federal constitutional provisions against unreasonable search and seizure. Section 3 provides that every copper dealer shall keep a record of each purchase of copper of 50 pounds or more in a separate book or register, with certain exceptions, and that the

same shall be available for inspection at all times. Section 4 provides that, with certain exceptions, every copper dealer shall hold each purchase of copper for seven days from the date of purchase during which time the copper dealer may not change the form of the copper and shall during said period permit an inspection of the same.

Citing *Camara v. Municipal Court, 387 U.S. 523, 18 L.Ed.2d 930, 87 S.Ct. 1727,* and *See v. City of Seattle, 387 U.S. 541, 18 L.Ed.2d 943, 87 S.Ct. 1737,* defendant contends that the inspection provisions of these sections authorize a warrantless search of his premises in violation of the fourth amendment of the Federal constitution. In both *Camara* and *See* the parties had been charged with violating a municipal ordinance by failing to permit an inspection of their premises without a search warrant. These cases hold that the fourth amendment bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his premises. *(See v. City of Seattle, 387 U.S. at 541-2, 18 L.Ed.2d at 945.)* In our case the defendant is not charged with a failure to permit an inspection of his books or of copper in his possession. He is charged with the failure to report the purchase of copper as required by statute and with the failure to file a copy of such report covering said purchase with the county clerk of Madison County within three days as provided. In this case we have no demand for a warrantless inspection. We have no refusal of such an inspection and we have no prosecution for a failure by the defendant to permit such an inspection. It is therefore not necessary that we determine whether such an inspection as is provided by the statute may constitutionally be made without a search warrant under the rationale of *United States v. Biswell, 406 U.S. 311, 32 L.Ed.2d 87, 92 S.Ct. 1593.* It is well established that the court will not consider the validity of a statutory provision at the instance of one who is not directly affected by it unless the unconstitutional feature is so pervasive as to render the entire Act

invalid. *(People v. Reiner, 6 Ill.2d 337; Huckaba v. Cox, 14 Ill.2d 126.)* "[A] court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question." *Grasse v. Dealer's Transport Co., 412 Ill. 179, 201, cert. denied 344 U.S. 837, 97 L.Ed. 651, 73 S.Ct. 47; Edelen v. Hogsett, 44 Ill.2d 215, 219.*

Even if it were to be held, and we do not so hold, that such an inspection cannot constitutionally be made without a warrant, the Act would not be invalid as to a particular defendant unless there had been a refusal to consent to an inspection followed by a warrantless inspection or a charge against the defendant for a failure to permit a warrantless inspection. In both *Camara* and *See* the Supreme Court did not hold the ordinances invalid but only held that the inspection provisions of the ordinances could not be enforced in the absence of consent without suitable warrant procedures. *(See v. City of Seattle, 387 U.S. 541, 546, 18 L.Ed.2d 943, 948, 87 S.Ct. 1737.)* The inspection provisions of sections 3 and 4, even if held to be unenforceable without a search warrant, are not therefore such as to render the entire Act invalid. The defendant not being directly affected by these provisions has no standing to challenge the constitutionality of the Act on this basis.

The judgment of the circuit court of Madison County is reversed and the cause is remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE UNDERWOOD concurring in part and dissenting in part:

I agree with the majority that the third and fifth allegations raised in defendant's motion to dismiss were merely conclusory generalizations, insufficient to raise a constitutional question, but I also reach that conclusion as to defendant's second and fourth allegations. "Where the constitutional validity of a statute is assailed the objection

must be specific and complete. It is not enough merely to assert in a vague and general fashion that constitutional safeguards are violated. The particular respect in which the statute violates some constitutional limitation must be pointed out and preserved for review in order to obtain a determination of such questions by this court." (*Biggs v. Cummins (1955), 5 Ill.2d 512, 516.*) I concur also in the finding that we need not decide whether the Act's inspection provisions violate the constitutional prohibition against unreasonable searches, but I do so for the reason that the issue, not having been presented to the trial court, is not properly raised for the first time on appeal. *People v. Moore (1969), 43 Ill.2d 102, 106.*

However, in my judgment, the exemption of municipalities with a population of 1,000,000 or over from the operation of the Act constitutes an unreasonable and arbitrary classification.

The majority, as I understand it, holds that because Chicago has a higher population density than any other city in the State, special problems in relation to law enforcement exist which justify the differences in regulating copper sales between Chicago and the remainder of the State. I cannot agree. For although this court has previously sustained legislative classifications applicable only to the city of Chicago, "[e]ach case and each statute must be separately considered and the problem must be resolved by the application of certain time-tested principles to the particular situation." *Du Bois v. Gibbons (1954), 2 Ill.2d 392, 398.*

We have frequently held that legislative classification based upon population is valid if there is a reasonable basis for the classification in relation to the objectives sought to be accomplished by the statute. (*Shepard v. Liquor Control Com. (1969), 43 Ill.2d 187; People ex rel. Adamowski v. Wilson (1960), 20 Ill.2d 568; Supervisors of Boone County v. Village of Rainbow Gardens (1958), 14 Ill.2d 504; Du Bois v. Gibbons (1954), 2 Ill.2d 392.* In the

absence of such relationship, however, it is equally well established that legislative classification on the basis of population is discriminatory and invalid. *Shepard v. Liquor Control Com. (1969), 43 Ill.2d 187; Giebelhausen v. Daley (1950), 407 Ill. 25; Kremers v. City of West Chicago (1950), 406 Ill. 546.*

The clear purpose of the Act is to obstruct the trafficking of stolen copper through "copper dealers" by requiring registration of copper purchases of 50 pounds or more within 3 days after the date of purchase and segregation of such purchases for a period of not less than 7 days from the date of purchase. A knowing failure to comply with the Act subjects the copper dealer to a maximum fine of $1,000 and up to 6 months imprisonment, or both. Each day of noncompliance constitutes a separate offense.

Defendant contends that the exemption of copper dealers in municipalities with populations of 1,000,000 or more (Chicago) from these stringent requirements and liabilities bears no rational relationship to the objectives of the Act. In response, the State suggests several possible justifications for the classifications. First, it is noted that a comprehensive Chicago ordinance regulating junk dealers was already in effect at the time this Act was passed which "the legislature no doubt determined *** was sufficient to meet the purpose of the State legislation." This suggestion is directly contradicted by the inclusion in the Act of a provision expressly exempting those municipalities which provide for the registration of copper purchases by resolution, ordinance or regulation which substantially complies with the substantive provisions of the Act. (Ill.Rev.Stat. 1969, ch. 121½, par. 327.) If the legislature had determined that the existing Chicago ordinance was in substantial compliance, the additional exemption on the basis of population was superfluous.

Secondly, the State argues that "the problem of theft of copper from communication and power utilities, and its

sale to junk dealers, [is] basically different as between metropolitan Chicago and thinly settled rural areas elsewhere in the State."

In support of this contention, the State cites: the difficulty of inspection and surveillance of unlicensed junk shops in sparsely populated areas; the greater opportunity of successfully disposing of stolen copper at remote, cross-roads junk yards, the reduced risk of apprehension for theft of utility lines extending over large rural areas; and the relative lack of concern by the Chicago scrap dealers with the purchase of small quantities of copper. Wholly apart from the fact that the classification in question does not differentiate between metropolitan Chicago and "thinly populated rural areas," but rather between the city of Chicago and the entire balance of the State, it seems to me that the classification bears no "discernible relationship to the realities of life." *Harvey v. Clyde Park District (1964), 32 Ill.2d 60, 67.*

Considering the high crime rate, the greater access to industrial copper supplies, and the large number of scrap metal and copper dealers in the city of Chicago (cited by defendant but as to which, in any event, judicial notice would be appropriate), there is, in my opinion, no reasonable basis for the classification in question in relation to the objectives of the Act. It would seem that, if necessary anywhere, this legislation would be most helpful in an area such as Chicago, parts of which are heavily populated by industrial users of copper. Accordingly, in my opinion the exemption of municipalities with populations of 1,000,000 or more is unconstitutional.

However, "[t]he fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all parts are so connected together as to depend upon each other." (*Lee v. Retirement Board (1964), 31 Ill.2d 252, 255.*) "Where that part of an act which is unconstitutional so limits and qualifies the remaining portion that the latter, when stripped of the

unconstitutional provision, is essentially different in its effect and operation from what it would be were the whole law valid, the act must be held invalid as a whole." (*Lee,* at 255-6.) Applying this test to the Copper Purchase Registration Law, it is clear that the elimination of the exemption of Chicago on the basis of population does not require the entire Act to be held invalid. The essential operation and effect of the Act is unchanged and, in fact, Chicago may retain its exempt status if, as alleged by the State, its ordinance substantially complies with the Act and a certificate of exemption is issued by the Department of Law Enforcement. (Ill.Rev.Stat. 1969, ch. 121½, par. 327.) Since, in my judgment, the unconstitutional provision of the Act is severable, I would reverse the trial court judgment holding the entire Act invalid as applied to defendant and remand the cause for trial on the merits.