THE COUNTY OF CHAMPAIGN, Plaintiff-Appellee, *v.* GARY ADAMS, Chairman of the County Board of the County of Champaign, Defendant-Appellant.

Fourth District   No. 14721

Opinion filed April 21, 1978.

Frederic M. Grosser, Special State's Attorney, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

County Board chairman Gary Adams appeals a trial court summary judgment order granting a writ of mandamus directing Adams to sign certain bonds as authorized by County Board resolution.

On August 16, 1977, the Champaign County Board, pursuant to section 1 of "An Act to authorize certain counties to incur an indebtedness and issue bonds for the construction of county jails and sheriffs' residences" (Ill. Rev. Stat. 1975, ch. 34, par. 2156), passed a resolution authorizing the sale of bonds in order to finance the construction of a new county jail and sheriffs' residence. The resolution directed that the bonds be signed on behalf of the County by its chairman, Gary Adams. Adams refused and the County sought a writ of mandamus.

Adams' answer stated that the resolution created no legal duty for him to sign the bonds; in addition, Adams alleged that section 1 of the Act was unconstitutional for a variety of reasons. Both sides moved for summary judgment. After argument, the trial court granted the County's summary judgment motion. The court found the resolution created a ministerial duty, that the underlying statute was constitutional, and that the requirements for mandamus had been met. Adams' notice of appeal was timely filed. It is undisputed that Champaign County's 1976 population was in excess of 160,000.

Both parties concede that there is no genuine issue of material fact involved. Therefore, the correctness of the trial court's decision rests on whether, as a matter of law, mandamus was properly granted.

Adams first argues that a County Board *resolution* (as opposed to an *ordinance*) cannot create a legal duty for him to sign the bonds. The statue authorizing the County Board action (Ill. Rev. Stat. 1975, ch. 34, par. 2156) provides:

> "Any county having·a population of 80,000 or more inhabitants may *by resolution* of its county board incur an indebtedness for the construction of a county jail and sheriffs' residence, and may issue and sell its bonds and levy taxes upon all the taxable property of such county sufficient to pay the principal thereof at maturity and to pay interest thereon as it falls due but the total amount of such bonds, together with existing indebtedness, shall not exceed the limitation provided by law for indebtedness of such county. Taxes levied for the payment of the interest on and principal of such bonds shall be in addition to the maximum of taxes provided by statute for counties and shall not be subject to the limitation for county taxes provided in Section 25 of 'An Act to revise the law in relation to counties', approved March 31, 1874, as amended.
>
> This amendatory Act of 1973 is not a limit upon any county which is a home rule unit." (Emphasis added.)

■■ In addition, section 26 of "An Act to revise the law in relation to counties" (Ill. Rev. Stat. 1975, ch. 34, par, 432) states that it shall be the *duty* of the county government to provide certain facilities, among them a county jail. The legislature's decision that the bonds may be authorized by

resolution of the county board is determinative of the chairman's legal duty to sign the bonds if so directed.

Adams also argues that the statute is arbitrary and irrational legislation in violation of equal protection and article IV, section 13, of the 1970 Illinois Constitution prohibiting special legislation. Adams contends that a county's need for new jail facilities does not solely depend on whether the county has more than 80,000 population since the central concern and consideration, the necessity of adequate jail facilities, does not alone depend on the county's size. The State argues that a rational relationship is created by this statute since the population floor is based on the number of crimes per county and not the rate of crimes per population; in counties over 80,000, the State continues, there will be a greater total number of crimes occurring.

■■ The burden is on the party attacking the validity of the statute to show its invalidity. (*People ex rel. Stamos v. Public Building Commission* (1968), 40 Ill. 2d 164, 238 N.E.2d 390; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325.) Voters have no constitutional right to a referendum upon the issue. (*Stamos.*) Although the scope of judicial review of legislation is enlarged by the 1970 Constitution, the supreme court has not changed its definitions concerning when a law is "general and uniform" or a "special" or "local" law. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 281 N.E.2d 317; *Friedman & Rochester, Ltd.*) A legislative classification based on population is valid if there is a reasonable relationship between the objectives sought to be accomplished by the law and the population differences fixed by the General Assembly. In absence of such a relationship, a legislative classification based upon population is discriminatory and invalid. (*Christen v. County of Winnebago* (1966), 34 Ill. 2d 617, 218 N.E.2d 103; *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 170 N.E.2d 605.) Before a court can interfere with the legislative judgment embodied in the statute, it must be able to say that there is no fair reason for the law which would not require with equal force its extension to other governmental units of smaller population which are not affected. *Gaca v. City of Chicago* (1952), 411 Ill. 146, 103 N.E.2d 617; *Holiday Inns of America v. Industrial Com.* (1971), 48 Ill. 2d 528, 271 N.E.2d 884; see also the summary in *Giebelhausen v. Daley* (1950), 407 Ill. 25, 95 N.E.2d 84.

■■ In the instant case, this court cannot and will not substitute its judgment for that of the legislature. We hold that the population floor of 80,000 set in the statute is not unreasonable or irrational. *Christen* is distinguishable because the class created by the legislation did not include the most populous county in the State, which rendered the rationale of need based on increased population without force. We also note that counties under 80,000 population were also given certain powers to be

used by resolution to meet what the legislature believed to be the physical needs of that class of county (Ill. Rev. Stat. 1975, ch. 34, par. 2154). Adams' constitutional challenge to the statute based on certain home rule provisions in our 1970 Constitution is without merit.

■■ The resolution created a ministerial duty in the chairman to sign the bonds. The underlying statute is constitutional. Summary judgment was properly granted. The order granting a writ of mandamus is affirmed.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.